IN RE ESTATE OF SHIRLEY SAMPSON STEPHENS, DECEASED.
RONALD KEITH STEPHENS, APPELLANT, V. ELEANORE FREEZE,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF SHIRLEY SAMPSON STEPHENS, DECEASED, APPELLEE.

608 N.W. 2d 201

Filed March 28, 2000. No. A-98-1233.

This opinion has been ordered permanently published
by order of the Court of Appeals dated February 4, 2000.

Kent E. Person, of Person Law Office, and Susan Buettner, of Buettner Law Office, for appellant.

William J. Ross and Vikki S. Stamm, of Ross, Schroeder, & Romatzke, for appellee.

IRWIN, Chief Judge, and HANNON and CARLSON, Judges.

IRWIN, Chief Judge.

# I. INTRODUCTION

Ronald Keith Stephens (Stephens) appeals the order of the district court for Buffalo County granting summary judgment in

favor of Eleanore Freeze, the personal representative of the estate of the decedent, Shirley Samson Stephens (Shirley), and denying Stephens' motion for summary judgment. For the reasons stated below, we affirm.

## II. FACTUAL BACKGROUND

Shirley died on January 25, 1998. On April 14, 1997, Shirley executed her last will and testament. After Shirley's death, Freeze filed a petition for formal probate of the will dated April 14, 1997, in the county court for Buffalo County. Objections to the formal probate of the will were filed by Shirley's daughter and Stephens. We note that Shirley's daughter is not involved in the appeal before us. The objections alleged that the will had not been properly executed and had been procured through fraud, duress, or coercion, or as a result of a failure of testamentary capacity. In particular, Stephens alleged that the will was the result of duress, coercion, fraud, and undue influence practiced on Shirley by Charles and Jan Nelson.

Upon Stephens' request, the matter was transferred to district court. On June 22, 1998, Stephens filed a motion for summary judgment requesting a judgment that the will had not been properly executed and was therefore void. On June 25, Freeze filed a motion for summary judgment in which she sought a judgment admitting the April 14, 1997, will into probate.

On July 7, 1998, a hearing was held on the motions. Both parties offered the following evidence in support of their respective motions: the depositions of the two people who had witnessed the signing of Shirley's will; the deposition of the attorney who had drafted Shirley's will and was present during its execution; and the documents, including Shirley's will, used as exhibits at the depositions and the documents contained in the attorney's file. Stephens offered his affidavit to which a timeliness objection was sustained. Therefore, Stephens' affidavit was not received in evidence.

The evidence generally shows as follows: In May 1996, Shirley contacted an attorney for the purpose of having a will prepared. Thereafter, they had a meeting at Shirley's home in Kearney, Nebraska. They discussed changes Shirley wished to make to a draft of a will that had been previously prepared.

According to the attorney, Shirley wanted to leave one parcel of land to the Nebraska Boys Ranch and another parcel of land to the Nebraska Arbor Day Foundation; Shirley told the attorney that most of her other assets would be distributed through joint accounts at her death, and Shirley expressed her desire that her daughter not participate in her estate. The attorney prepared a will according to Shirley's directives and forwarded a copy to Shirley. The attorney believed that Shirley executed the will at a commercial banking institution.

In 1997, Shirley again contacted the attorney regarding her will. Shirley expressed her concern regarding her bequest to the Nebraska Arbor Day Foundation. According to the attorney, Shirley wanted to ensure that the entity to whom she bequeathed this land concentrated its efforts in Nebraska. At Shirley's request, the attorney made some inquiries of another charitable institution. In early April 1997, Shirley informed the attorney that she had decided to bequest this parcel of land to the Nelsons "because they would take care of the trees." The attorney drew up a new will as requested by Shirley.

The attorney and Shirley arranged to execute the will at Shirley's home on April 14, 1997. Shirley called Dr. Lawrence Bauer, a longtime neighbor, and Lynn Bedke, a longtime friend, to act as witnesses. It appears that Charles Nelson may also have been present during the signing of the will.

Prior to the execution of the will, the attorney and Shirley discussed the contents of the will. The attorney believed that Shirley understood the nature of her estate and of her bequests and that Shirley was acting of her own free will. At that time, Shirley again expressed her desire not to make any provision for her daughter. According to the attorney, Shirley executed the will in the attorney's presence and the presence of both witnesses: Shirley signed and initialed each page in the presence of the attorney, Bauer, and Bedke.

Bauer testified that Shirley had called him and asked him to witness her signature on her will. When Bauer went to Shirley's home at the time requested, Shirley was "her usual self." According to Bauer, "at the appropriate time I was asked to witness Shirley's signature." He did not recall the number of pages of the document and only saw the page that he signed. Bauer

stated that he and Bedke were both in the room when they each signed the document. When asked whether he had observed Shirley signing her name, Bauer stated, "I can't honestly say, but I'm sure that it appeared to me that everything was in order at the time, but I can't honestly say." When asked whether he had seen Shirley initial other pages of the will, Bauer stated, "No, I don't recall seeing that, but it could have happened without me noticing it."

Bedke testified that Shirley had told her that Shirley had a paper for her to sign. According to Bedke, Shirley appeared "[g]ood" and there was nothing "out of the ordinary." Bedke acknowledged that her signature on the acknowledgment page was in fact her signature. Bedke remembered the attorney pulling a paper out of a file and asking that Bedke sign the paper. According to Bedke, the attorney stated, "[T]his is just saying that Shirley was in her right state of mind that, you know, what was in her will, and just asked for you to sign it." Bedke testified that she did not see Shirley sign the will or initial the pages of the will.

On October 5, 1998, the district court entered an order granting Freeze's motion for summary judgment and denying Stephens' motion for summary judgment. The district court found no issues of material fact on the issues of fraud, coercion, undue influence, and lack of testamentary capacity. The court also concluded that under the evidence presented, the will was conclusively presumed to be properly executed and there was no evidence to rebut the presumption. Therefore, the district court dismissed the objections to admitting the will to probate and ordered that the will should be received into probate. The district court remanded the case to the county court. After the district court overruled Stephens' motion for new trial, he timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

Stephens' assignments of error may be summarized as follows: The district court erred in (1) granting summary judgment in favor of Freeze after concluding that there were no genuine issues of fact as to fraud, coercion, undue influence, and lack of testamentary capacity; (2) finding that the will at issue was

conclusively presumed to have been properly executed despite deposition testimony of the witnesses to the will; and (3) not sustaining Stephens' motion for summary judgment.

## IV. ANALYSIS

### 1. PERSONAL REPRESENTATIVE'S MOTION

We address whether the district court properly sustained Freeze's motion for summary judgment. Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Shivvers v. American Family Ins. Co.*, 256 Neb. 159, 589 N.W.2d 129 (1999); *Willers v. Willers*, 255 Neb. 769, 587 N.W.2d 390 (1998). On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999); *Wood v. McGrath, North*, 256 Neb. 109, 589 N.W.2d 103 (1999).

In order to prevail, a personal representative as proponent of a will is required to prove by a preponderance of the evidence not only the lawful execution of the will, but also the testamentary capacity of the testator at the time when the will was made. *In re Estate of Camin*, 212 Neb. 490, 323 N.W.2d 827 (1982). If the proponent makes a prima facie case in chief as to both, then it devolves upon a contestant to proceed and adduce sufficient competent evidence to overcome the presumption arising therefrom. *Id.* The contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation. *Id.*

### (a) Signature Requirements

Stephens contends that the evidence raised a genuine issue of material fact of whether the will was properly executed. He argues that the depositions of Bauer and Bedke rebut the presumption that the signature requirements were complied with.

As relevant to the case before us, Neb. Rev. Stat. § 30-2327 (Reissue 1995) provides that a will must be signed by the testator and signed by two individuals "each of whom witnessed

either the signing or the testator's acknowledgment of the signature or of the will."

We note that the will before us has an acknowledgment signed by Shirley and the witnesses, which acknowledgment complies with Neb. Rev. Stat. § 30-2329 (Reissue 1995). Therefore, it is considered a self-proved will. Section 30-2329 provides in relevant part: "The execution of the acknowledgment by the testator and the affidavits of the witnesses as provided for in this section shall be sufficient to satisfy the requirements of the signing of the will by the testator and the witnesses under section 30-2327." Neb. Rev. Stat. § 30-2430(b) (Reissue 1995) describes the effect to be given a self-proved will:

> If the will is self-proved, compliance with signature requirements for execution is conclusively presumed and other requirements of execution are presumed subject to rebuttal without the testimony of any witness upon filing the will and the acknowledgment and affidavits annexed or attached thereto, unless there is proof of fraud or forgery affecting the acknowledgment or affidavit.

In the case before us, the acknowledgment section of Shirley's will bears the signatures of Shirley, Bauer, and Bedke. We note that the acknowledgment section states, in part, that the witnesses "declare . . . that the Testatrix signs and executes this instrument as her Last Will." The deposition testimony of Bauer and Bedke establish that the signatures on the acknowledgment section are in fact their signatures but that they did not recall witnessing Shirley's signature. The attorney testified in her deposition that Shirley executed the will in the presence of the attorney, Bauer, and Bedke and that Shirley signed her signature at the conclusion of the will and initialed the pages of the will in the attorney's presence and the presence of Bauer and Bedke.

 The purpose of the self-proved provision in § 30-2430 is to expedite formal testacy proceedings. *In re Estate of Flider*, 213 Neb. 153, 328 N.W.2d 197 (1982). The Nebraska Supreme Court has stated that a self-proved will may not be contested in regard to signature requirements but that the formal requisites for execution of the will must appear, either preceding the self-proving affidavit or as supplemental in the affidavit. *Id.* See, also, *Matter of Estate of Mackaben*, 126 Ariz. 599, 617 P.2d 765

(Ariz. App. 1980). Section 30-2430 was adopted from the Uniform Probate Code. The comment in the Uniform Probate Code provides that the " 'conclusive presumption' described here would foreclose questions like whether the witnesses signed in the presence of the testator. It would not preclude proof of undue influence, lack of testamentary capacity, revocation or any relevant proof that the testator was unaware of the contents of the document." 8, pt. II, Uniform Laws Annotated § 3-406 at 85 (1998). A conclusive presumption is defined as a "presumption that cannot be overcome by any additional evidence or argument." Black's Law Dictionary 1204 (7th ed. 1999).

The record in this case shows that the will complies with the requirements of § 30-2329 and that the formal requisites for execution appear. Therefore, pursuant to § 30-2430, the signature requirements for execution are conclusively presumed, notwithstanding the poor memories of Bauer and Bedke. As a result, a conclusive presumption exists as to the signature requirements of § 30-2327, which may not now be challenged. The evidence also does not raise a genuine issue of material fact regarding fraud, forgery, or other proof that Shirley was unaware of the contents of the document.

### (b) Undue Influence

On appeal, Stephens contends that the evidence raised a genuine issue of material fact regarding the issue of undue influence. As discussed above, the conclusive presumption that the signature requirements were complied with as established by a self-proved will does not preclude proof of undue influence or lack of testamentary capacity.

Undue influence such as to defeat a will is such manipulation as destroys the free agency of the testator and substitutes another's purpose for that of the testator. *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994). Mere suspicion, surmise, or conjecture does not warrant a finding of undue influence; there must be a solid foundation of established facts on which to rest the inference of its existence. *Id.* To establish undue influence, the party asserting that theory has the burden to prove that the person who executed the challenged instrument was subject to undue influence, that there was an opportunity to exercise

undue influence, that there was an intent to exercise undue influence for improper purpose, and that the result was clearly a product of undue influence. *Pruss v. Pruss*, 245 Neb. 521, 514 N.W.2d 335 (1994).

The only facts regarding the Nelsons established by the evidence presented at the summary judgment hearing are that Charles Nelson was present at Shirley's home at the time her will was executed and that Shirley left a parcel of her land to the Nelsons which apparently had been bequeathed to Stephens in some prior will. There was no evidence to suggest that Shirley was subject to undue influence. To the contrary, the evidence shows that Shirley had strong convictions regarding the disposition of her estate. Stephens also failed to present any evidence concerning whether the Nelsons were disposed to exercise undue influence for an improper purpose. That Shirley chose to leave the Nelsons a parcel of her land does not raise an issue of fact regarding undue influence.

### (c) Testamentary Capacity

In order to be entitled to summary judgment, Freeze also had to establish Shirley's testamentary capacity as a matter of law. Prima facie proof of a testator's testamentary capacity is established by the introduction of a self-proved will. *In re Estate of Wagner, supra*; *In re Estate of Camin*, 212 Neb. 490, 323 N.W.2d 827 (1982). Such prima facie proof is rebuttable with competent evidence to the contrary. *Id.*

In the present case, Freeze successfully established prima facie proof of Shirley's testamentary capacity through the offer of the self-proved will. Freeze also offered the testimony of the attorney, Bauer, and Bedke regarding Shirley's condition on the day that the will was executed. The attorney described Shirley as a "determined individual" who was acting voluntarily and of her own free will. According to Bauer, Shirley was her "usual self." Bedke stated that Shirley appeared "[g]ood" and that there was nothing "out of the ordinary" about Shirley on the day that the will was executed. No testimony was received that raises a question regarding Shirley's testamentary capacity. Therefore, we conclude that there exists no issue of material fact regarding Shirley's testamentary capacity.

### (d) Resolution

Given that the evidence raised no issues of material fact regarding the existence of undue influence, the proper execution of the will, and Shirley's testamentary capacity, Freeze was entitled to judgment as a matter of law.

### 2. STEPHENS' MOTION FOR SUMMARY JUDGMENT

Stephens also assigns that the district court erred in failing to grant his motion for summary judgment. As we concluded above that Freeze was entitled to judgment as a matter of law, we conclude that this assigned error is without merit.

### V. CONCLUSION

As discussed above, the evidence establishes as a matter of law Shirley's testamentary capacity and that the proffered will was properly executed. The evidence raises no issue of fact regarding undue influence. Therefore, we conclude that Freeze was entitled to a judgment as a matter of law. The district court properly granted Freeze's motion for summary judgment and denied Stephens' motion for summary judgment.

AFFIRMED.