VICTORY LAKE MARINE, INC., APPELLEE, V. PAUL VELDUIS
AND CLARK SCHAEFER, DOING BUSINESS AS OUTSOURCE
PACKAGING & DISTRIBUTION, INC., AND OMAHA PACKAGING &
DISTRIBUTION, INC., A NEBRASKA CORPORATION, APPELLANTS.

621 N.W. 2d 306

Filed December 26, 2000.   No. A-99-1126.

Thomas B. Thomsen and Jennifer A. Richardson, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellants.

David C. Mitchell, of Yost, Schafersman, Lamme, Hillis, Mitchell, Schultz & Twidwell, P.C., for appellee.

Irwin, Chief Judge, and Inbody and Carlson, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

Paul Velduis and Clark Schaefer, and Omaha Packaging & Distribution, Inc. (Omaha Packaging), appeal the order of the district court granting summary judgment in favor of Victory Lake Marine, Inc. (VLM). Because we find that genuine issues of material fact still remain, we reverse, and remand for further proceedings.

## II. BACKGROUND

On December 1, 1995, the parties entered into a 60-month lease for one half of an office and warehouse building in Fremont, Nebraska. The lease lists the landlord as VLM and the tenant as Outsource Packaging & Distributing, Inc. (Outsource). Ronald Vlach signed the lease agreement in his capacity as president of VLM. Velduis signed as president of Outsource, and Schaefer signed as vice president.

In August 1997, VLM terminated the lease due to unpaid rent and began proceedings to remove appellants from its property and to collect back rent and damages. Appellants vacated the property the following month. Outsource, Velduis, and Schaefer were listed as defendants in the initial petition.

On December 5, 1997, VLM filed an amended petition. This petition alleged that Outsource was a nonexistent entity and that it should be disregarded. Rather than attempting to recover from Outsource, the petition added Omaha Packaging as a new defendant and asserted that the Fremont business was a joint venture of Velduis, Schaefer, and Omaha Packaging.

In their answer to the amended petition, appellants asserted that Omaha Packaging, also known as Outsource, was a Nebraska corporation duly authorized to enter into the lease.

They also asserted that Velduis and Schaefer entered into the lease in their capacities as officers of Omaha Packaging.

On May 4, 1998, appellants filed a motion for summary judgment. That was followed by an amended motion for summary judgment on August 13. The documentation submitted with the second motion indicates that articles of incorporation for Omaha Packaging were filed with the Nebraska Secretary of State on November 16, 1992. In affidavits supporting the motion, Velduis and Schaefer indicated that they attempted to change the name of this corporation to "Outsource Packaging & Distribution, Inc.," in 1994. However, they failed to file the articles of amendment with the Secretary of State, so the name was not officially changed.

In their affidavits, Velduis and Schaefer also stated that they were under the belief that they had taken the necessary steps to change the name. To support this statement, they submitted corporate tax returns for 1995 and 1996 on which they used the name "Outsource Packaging & Distribution, Inc." They also stated that they changed their bank accounts to reflect the new name. As of April 15, 1998, Omaha Packaging was still a corporation in good standing in Nebraska.

On July 28, 1999, VLM moved for summary judgment on the issues of liability as it applies to the individual defendants and both Outsource and Omaha Packaging, damages, and individual liability of Velduis and Schaefer. In Vlach's affidavit supporting the motion, he asserted that Velduis and Schaefer were individually liable due to the fact that Outsource was not a legitimate corporation when the lease was signed. He also asserted that Omaha Packaging's corporate entity should be disregarded based upon the principles of piercing the corporate veil. The affidavit of a certified public accountant was submitted in support of this assertion.

On September 2, 1999, the district court issued an order ruling on the summary judgment motions. The court found that Outsource was a nonexistent entity and that Velduis and Schaefer are individually liable as promoters, incorporators, and/or individuals simply doing business as Outsource. The court also found that even if Velduis and Schaefer had properly effectuated the name change or established a new corporation, it

would have pierced the corporate veil in order to prevent fraud or injustice to VLM. The court found that the entity was grossly and inadequately capitalized and was insolvent at the time the leasehold obligation was incurred, that the operations were carried on in disregard of the corporate entity, and that the entity was otherwise used to violate a legal duty or perpetuate a dishonest or unjust act in contravention of the rights of VLM.

Further, the court found that the business operations conducted out of the leasehold premises were a joint venture of Omaha Packaging, Velduis, and Schaefer. For the same reasons stated above, the court disregarded the corporate entity of Omaha Packaging, leaving the owners, Velduis and Schaefer, individually liable.

Pursuant to these findings, the court granted VLM summary judgment against Velduis, Schaefer, and Omaha Packaging, each of them in the amount of $79,840.40 plus costs. This timely appeal followed.

### III. ASSIGNMENTS OF ERROR

On appeal, appellants have assigned two errors. Those assignments can be consolidated and restated as follows: The district court erred in granting summary judgment in favor of VLM on the issue of imposing personal liability on Velduis and Schaefer. In their reply brief, they attempt to assign as error the trial court's finding that a joint venture existed between Velduis, Schaefer, and Omaha Packaging. Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief. *Morton v. Farmers Co-op Bus. Assn.*, 1 Neb. App. 552, 510 N.W.2d 326 (1993). Therefore, to the extent the issue is not raised in appellants' original brief, we will not consider the erroneously assigned error.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of

law. *In re Estate of Stephens*, 9 Neb. App. 68, 608 N.W.2d 201 (2000). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Consolidated Nutrition v. Grone*, 8 Neb. App. 404, 594 N.W.2d 668 (1999). On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *In re Estate of Stephens, supra.*

## 2. Corporate Name Change

The trial court found that Outsource was a nonexistent entity and that Velduis and Schaefer were individually liable as promoters, incorporators, and/or individuals doing business as Outsource. It is true that a corporation named "Outsource Packaging & Distribution, Inc.," could not be found on the books of the Secretary of State. However, because appellants assert that they attempted to make that the official name of their existing corporation, that does not end the inquiry.

The Illinois case of *Pilsen Brewing Co. v. Wallace*, 291 Ill. 59, 125 N.E. 714 (1919), is instructive on this issue. Under substantially similar facts, the Illinois Supreme Court determined that even though a corporation used an unauthorized name on a contract, the president of that corporation was not personally liable. As in the case before us, the stockholders had adopted a resolution to change the name of the corporation, but no certificate of change was filed with the secretary of state. The court rested its decision on the fact that when corporations change their names, they are not relieved of obligations incurred under the old name. Likewise, an existing corporation is not relieved from liability on contracts made in an unauthorized name. Because the corporation was liable, the president was not.

Citing *Hoskins Chevrolet, Inc. v. Hochberg*, 294 Ill. App. 3d 550, 691 N.E.2d 28, 229 Ill. Dec. 92 (1998), VLM suggests that *Pilsen Brewing Co.* no longer has any precedential value. In *Hoskins Chevrolet, Inc.* the court found the president of a corporation personally liable for the price of auto parts purchased under an unauthorized name. While this seems to be inconsistent with the holding in *Pilsen Brewing Co.*, the facts reveal that it is not.

In *Hoskins Chevrolet, Inc.*, unlike when *Pilsen Brewing Co.* was decided, the law in Illinois allowed corporations to elect to adopt an assumed name if certain prescribed procedures were followed. The decision in *Hoskins Chevrolet, Inc.* was based on the fact that there was no good faith attempt to comply with the formalities of the law for either creating a corporation or operating under an assumed name. The *Hoskins Chevrolet, Inc.* court stated that *Pilsen Brewing Co.* was distinguishable because a resolution had been adopted to change the name of the corporation.

In *Pilsen Brewing Co.*, the court noted that the corporation operated on the assumption that a name change had been made. *Hoskins Chevrolet, Inc.* suggests that at least a good faith effort at complying with statutory requirements is required to retain the protections of the corporate form. We find the reasoning of both *Pilsen Brewing Co.* and *Hoskins Chevrolet, Inc.* to be sound and consistent with Nebraska law. Of course, good faith efforts to comply with the requirements for making a corporate name change will not protect individuals engaging in fraud. One who misrepresents a material fact to another to induce the latter to enter into a financial relation with a corporation, to that person's detriment, may be liable to such other person for fraud and misrepresentation. *Huffman v. Poore*, 6 Neb. App. 43, 569 N.W.2d 549 (1997). Further, "it has long been held in Nebraska that where fraud is committed by a corporation, it is time to disregard the corporate fiction and hold the persons responsible therefor liable in their individual capacities." *Id.* at 51, 569 N.W.2d at 556.

Consistent with these Illinois cases, the Nebraska Supreme Court has said that "[a] change of corporate name does not make a new corporation, but only gives the corporation a new name." *Rawleigh Medical Co. v. Bunning*, 104 Neb. 179, 183-84, 176 N.W. 85, 86 (1920) (quoting *W.T. Rawleigh Co. v. Grigg*, 191 S.W. 1019 (Mo. App. 1917)). In the instant case, had the proper articles of amendment been filed with the Secretary of State, VLM would have been dealing with the very same entity previously designated as "Omaha Packaging & Distribution, Inc." The fact that appellants failed to file the amendment did not cause this entity to go out of existence. The principals of the corporation continued operating Omaha

Packaging's business under an unauthorized name. We draw no other conclusion about this, except to say that in this case, the act of operating under an unauthorized name did not, as a matter of law since we are dealing with summary judgment, render the principals personally liable.

The trial court's decision appears to have been based on the black letter law that people who act on behalf of a nonexistent corporation are personally liable for all incurred obligations if that corporation does not achieve a legal existence. See, Neb. Rev. Stat. § 21-2020 (Reissue 1997); *Elson v. Schmidt,* 136 Neb. 778, 287 N.W. 196 (1939). However, the standard rule is not applicable in this case, because a corporation, Omaha Packaging, was in existence at the time the lease was signed. The decision should have been based on the law concerning corporate name changes. If appellants made a good faith effort to comply with the statutory requirements for changing the corporate name and they were not attempting to defraud VLM, then, personal liability would not be imposed. These are genuine issues regarding material facts.

Although appellants' evidence possesses irregularities, appellants have produced resolutions and minutes indicating that they attempted to change the name of Omaha Packaging to "Outsource Packaging & Distribution, Inc." Velduis and Schaefer also stated in their affidavits that they believed that they had been successful in changing the name. The affidavits of both Vlach and VLM's accountant suggest less than good faith efforts on the part of appellants. Whether good faith efforts to change the name and whether appellants were attempting to defraud VLM remain disputed material facts. Summary judgment was therefore not appropriate concerning this issue.

### 3. Piercing Corporate Veil

The trial court also found that even if Outsource had been a de jure or de facto corporation, it would have disregarded the corporate existence. A corporation is a legal entity separate and apart from its officers and shareholders. *Wolf v. Walt,* 247 Neb. 858, 530 N.W.2d 890 (1995). Under the Business Corporation Act, unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally

liable for the acts or debts of the corporation. Neb. Rev. Stat. § 21-2041 (Reissue 1997).

■ However, a court will disregard a corporation's identity where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. *Wolf, supra.*

> Among the factors which are relevant in determining to disregard the corporate entity on the basis of fraud are (1) grossly inadequate capitalization; (2) insolvency of the debtor corporation at the time the debt is incurred; (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses; and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity. These are not acts of fraud in themselves but, rather, are elements of circumstantial proof of fraud.

*Southern Lumber & Coal v. M.P. Olson Real Est.,* 229 Neb. 249, 256, 426 N.W.2d 504, 509 (1988).

Whether these factors exist is a material factual issue. In this case, the pleadings, depositions, admissions, stipulations, and affidavits disclose that there are genuine issues concerning the existence of these factors.

■ The adequacy of capitalization is measured at the time of incorporation. *Wolf, supra.* Since appellants did not indicate that they were attempting to organize a new corporation, the relevant time period for this factor is 1992, when Omaha Packaging was incorporated. The record contains no financial information from 1992. The fact that the articles of incorporation authorize 10,000 shares at $1 par value is not conclusive on this issue. The authorization to issue capital stock in a corporation's articles of incorporation should not be confused with formal minimum paid-in capital requirements and, more important, does not reflect the ability of the corporation to conduct its business. *Global Credit Servs. v. AMISUB,* 244 Neb. 681, 508 N.W.2d 836 (1993).

The record does contain some information about whether the entity in question was insolvent at the time the lease was entered into. VLM's accountant looked at tax returns and balance sheets

included with those tax returns to determine that the corporation was likely insolvent in both the equity sense and bankruptcy sense. Appellants question the validity of the accountant's analysis because the accountant examined only tax reports. However, the tax reports are the only financial information provided by appellants. Appellants also insist that Omaha Packaging was not insolvent because the rent was paid for over a year. At the same time, VLM indicates that the rent was virtually never paid on time. Even assuming without deciding that, under these facts, Omaha Packaging was insolvent when it entered into the lease agreement, it is only one factor. In determining whether to disregard the corporate form, a court examines " ' "the whole transaction, looking through corporate forms to the substance of things, to protect the rights of innocent parties, or to circumvent fraud." ' " *J.L. Brock Bldrs., Inc. v. Dahlbeck*, 223 Neb. 493, 494, 391 N.W.2d 110, 113 (1986).

The final factor in this analysis is whether the operations of the corporation were carried on by the shareholders in disregard of the corporate entity. The evidence of corporate formalities in the record is less than perfect. However, it does exist and creates a genuine issue of fact.

Ultimately, a question of fact remains whether Omaha Packaging has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. VLM's argument emphasizes a proposition of law that suggests a corporate entity can be disregarded to prevent injustice to the plaintiff. Notwithstanding this proposition, a court will not pierce the corporate veil simply to ensure that a creditor is paid. Because genuine issues of material fact remain, summary judgment based on piercing the corporate veil is also inappropriate.

### 4. ESTOPPEL

In their reply brief, appellants argue that VLM should be estopped from denying the existence of Outsource, because it knew it was dealing with a corporation when the lease was signed. It is true that when a person contracts with an entity acting as a corporation, that person can be estopped from denying its corporate status. See, *Hoskins Chevrolet, Inc. v. Hochberg*,

294 Ill. App. 3d 550, 691 N.E.2d 28, 229 Ill. Dec. 92 (1998); *Hughes Co. v. Farmers Union Produce Co.*, 110 Neb. 736, 194 N.W. 872 (1923). However, equitable estoppel is an affirmative defense and must be raised in the pleadings to be considered by a trial court and on appeal. *Hughes Co., supra; Weaver v. Compton*, 8 Neb. App. 961, 605 N.W.2d 478 (2000). Appellants did not plead the defense of estoppel and are precluded from arguing it on appeal.

## V. CONCLUSION

This appeal concerned only the personal liability of Velduis and Schaefer on a business lease. There are no issues as to leasehold liability or amount due VLM. Because we disagree that the trial court could find as a matter of law that Velduis and Schaefer are personally liable, we reverse the grant of summary judgment and remand for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.