claims of ineffective assistance of counsel including a claim that counsel was deficient in failing to timely file, or otherwise timely perfect, a direct appeal, the district court shall make its determination regarding the claim regarding the direct appeal, including holding an evidentiary hearing if the court determines that an evidentiary hearing is necessary, prior to addressing the defendant's other postconviction claims. We also note that although the issue is not directly presented to us, judicial economy would be best served by following this same procedure in all postconviction cases where the district court determines that an evidentiary hearing is needed on one or more of the defendant's claims but not on other claims.

## CONCLUSION

Based on our ruling, we find that the district court erred in ruling on the balance of Determan's postconviction claims prior to holding an evidentiary hearing on his entitlement to a new direct appeal, and therefore, the decision of the district court denying Determan's motion for postconviction relief without an evidentiary hearing on his second, third, and fourth claims is vacated and this cause is remanded for further proceedings.

JUDGMENT VACATED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.

---

IN RE ESTATE OF MARY ANN CLINGER, DECEASED.
ORIN M. CLINGER ET AL., APPELLANTS, V.
SHAUN CLINGER, PERSONAL REPRESENTATIVE
OF THE ESTATE OF MARY ANN CLINGER,
DECEASED, ET AL., APPELLEES.
___ N.W.2d ___

Filed January 27, 2015.    No. A-13-769.

1. **Rules of the Supreme Court: Appeal and Error.** A party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant.

2. ____: ____. The cross-appeal section must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of facts.

3. **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.

4. **Directed Verdict: Evidence.** A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.

5. **Wills: Proof.** In a contested case, the proponents of a will have the burden of establishing prima facie proof of testamentary capacity.

6. **Wills: Words and Phrases.** One possesses testamentary capacity if she understands the nature of her act in making a will or a codicil thereto, knows the extent and character of her property, knows and understands the proposed disposition of her property, and knows the natural objects of her bounty.

7. **Wills: Proof.** Prima facie proof of a testator's testamentary capacity is established by the introduction of a self-proved will.

8. ____: ____. Prima facie proof of a testator's testamentary capacity is rebuttable with competent evidence to the contrary.

9. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

10. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

11. **Trial: Evidence: Appeal and Error.** A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of abuse of discretion.

12. **Rules of Evidence: Hearsay: Proof.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

13. **Rules of Evidence: Hearsay: Words and Phrases.** A "statement," for purposes of the Nebraska Evidence Rules, is an oral or written assertion or nonverbal conduct of a person, if it is intended by him as an assertion.

14. **Rules of Evidence: Hearsay.** A statement of the declarant's then existing state of mind is excluded from the hearsay rule.

15. **Trial: Evidence: Jury Instructions.** Where evidence is admissible for some purposes, but not for others, a limiting instruction directing the jury for

which purpose the evidence can be considered does not constitute an abuse of discretion.

16. **Trial: Witnesses.** While the right to cross-examine a witness is an essential and fundamental requirement of a fair trial, it is not absolute.

17. **Trial: Juries: Evidence.** The jury should not have unrestricted review of a testimonial exhibit.

18. ____: ____: ____. Courts have broad discretion in allowing the jury unlimited access to properly received exhibits that constitute substantive evidence.

19. **Trial: Testimony: Evidence.** Neb. Rev. Stat. § 25-1240 (Reissue 2008) provides four modes by which testimony of witnesses can be taken, including by affidavit, deposition, oral examination, and video recording of an examination conducted prior to the time of trial for use at trial in accordance with procedures provided by law.

20. **Wills: Undue Influence: Proof.** In a will contest case in which undue influence is claimed, the contestant must prove the following elements by a preponderance of the evidence: (1) The testator was subject to undue influence; (2) there was an opportunity to exercise such influence; (3) there was a disposition to exercise such influence; and (4) the result was clearly the effect of such influence.

21. **Wills: Undue Influence: Presumptions.** A presumption of undue influence exists if the contestant's evidence shows a confidential or fiduciary relationship, coupled with other suspicious circumstances.

22. **Wills: Undue Influence: Presumptions: Evidence: Proof.** Once the contestant meets its burden of proving the presumption of undue influence, the proponents of the will must rebut the presumption that arises by producing evidence that there was no undue influence, and once they do so, the presumption disappears.

23. **Wills: Undue Influence: Presumptions: Evidence.** The presumption of undue influence in a will contest case is not an evidentiary presumption.

24. **Presumptions: Proof.** Under the "bursting bubble" theory of presumptions, when evidence is introduced to rebut the presumption, the presumption disappears and the burden of proof or persuasion does not shift.

25. **Courts: Juries.** The decision whether to reply to questions from the jury regarding the applicable law is entrusted to the discretion of the trial court.

26. ____: ____. The court can, in the exercise of its discretion, refuse to reply to a question from the jury regarding the applicable law.

Appeal from the District Court for Custer County: Mark D. Kozisek, Judge. Affirmed.

Bradley D. Holbrook and Nicholas R. Norton, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellants.

Steven P. Vinton, of Bacon & Vinton, L.L.C., for appellee Shaun Clinger.

George G. Vinton for appellees Calvin Clinger and Patricia Clinger.

Moore, Chief Judge, and Riedmann and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Orin M. Clinger, Mary E. Chalupa, Melvina D. Bundy, and Sandra A. Goodwater (collectively the contestants) appeal and Shaun Clinger, Calvin Clinger, and Patricia Clinger (collectively the proponents) attempt to cross-appeal from the order of the district court for Custer County which found that the will of Mary Ann Clinger dated February 18, 2011, was valid. On appeal, the contestants argue that the district court erred in directing a verdict on the issue of testamentary capacity, playing a video for the jury and allowing it into the jury room, refusing their proposed jury instructions, and responding to a question from the jury. We conclude that the court did not err in its decisions and therefore affirm.

## BACKGROUND

Mary Ann and her husband, Melvin Clinger, were the parents of six children: Mary Chalupa, Sandra Goodwater, LeRoy Clinger, Orin Clinger, Calvin Clinger, and Melvina Bundy. Mary Ann and Melvin owned a 320-acre farm near Ansley, Nebraska, and all of the children worked on the farm while growing up. In November 1997, Melvin and Mary Ann entered into a written lease agreement to rent the farm to their son Calvin for annual rent of $24,000. At the time, the rent was the farm's only source of income. Melvin died on January 1, 1998, and in February, Mary Ann and Calvin entered into a new lease agreement which decreased the annual rent to $19,580.

In 2000, the contestants became concerned about Mary Ann's financial situation. Mary Ann complained to her doctor that she was under a lot of stress and unable to pay her bills because Calvin was not making his rent payments. She received a foreclosure notice from one of her creditors and feared she would lose the farm. The contestants then initiated a conservatorship action because of their concerns about Mary Ann's ability to control her own finances.

A guardian ad litem was appointed temporarily, and according to him, Mary Ann's finances were "a mess" because Calvin

was not paying any farm or machinery rent to her. Not only was there no income coming in, but Mary Ann was also paying all of the farming expenses that should have been paid by Calvin. In addition to the financial concerns, there were concerns raised about Calvin's influence over Mary Ann. The guardian ad litem felt that Calvin was living off of Mary Ann's existence at that time. In January 2001, a permanent conservator was appointed. Mary Ann was very upset with the contestants because she did not think the conservatorship was necessary.

On August 24, 2001, Mary Ann executed a will, in which she left the entire farm to Calvin. The execution of the will was recorded. In the video, the attorney who drafted the 2001 will asked Mary Ann questions about herself, her family, the property she owned, and the will. He specifically asked her whether Calvin or anyone else influenced the making of the will, and she said no.

Over the next 10 years after the will was executed, Mary Ann's physical health deteriorated. In January 2011, she was diagnosed with lung cancer, and the medical plan from that point was to keep her comfortable. She was prescribed numerous medications, including at least five narcotics with possible side effects of sedation, confusion, dizziness, and disorientation. Mary Ann's doctor, however, did not detect in Mary Ann any of the potential side effects of the medications. He observed that Mary Ann was able to communicate and participate in her care at the time and that despite being limited by her body, she was still mentally "sharp." Mary Ann's physician never saw any signs of dementia in her, and she retained the ability to understand what property she owned, who her children were, and what she was doing.

Also in January 2011, Mary Ann asked Calvin to draft a new will for her. She made changes in the percentages each child received, as well as in the disposition of some Bibles and her wedding ring. But the disposition of property was similar to that of the August 2001 will in that Mary Ann left the entire farm to Calvin and divided her home and personal property among her other five children. Mary Ann's attorney at the time, Steve Herman, was concerned that

the January 2011 will was drafted by a layperson and that he knew nothing about its execution; therefore, he recommended that Mary Ann execute a new will. Because of Mary Ann's failing health, Herman went to Mary Ann's house on February 17, 2011, to discuss the new will he was drafting for her. According to Herman, Mary Ann clearly knew that she wanted to make a will and understood the making of the will. Mary Ann discussed her relationship with her children and assured Herman that the proposed distribution of her assets was what she wanted.

On February 18, 2011, Herman's law partner and two of his staff members went to see Mary Ann to execute the will. When they arrived, Mary Ann recognized them, called them by name, and knew why they were there. According to Herman's law partner, Mary Ann's physical condition was weaker than it had been previously, but she was still thinking clearly and displayed her usual good sense of humor. He asked Mary Ann about every provision in the will, and she provided commentary on why she wanted her assets disposed of the way she did. He said that Mary Ann's medications did not seem to affect her ability to think clearly, and he "absolutely" believed that Mary Ann understood the nature of her acts at the time. Thus, the will was executed that day.

The February 2011 will left the entire 320 acres of farmland to Calvin. The proceeds from the sale of her house and its contents were to be divided among her other five children, and the remainder of the estate was also to go to Calvin. The will specified that Mary Ann was aware the devise to Calvin was substantially more valuable than the devise to the other children, but that she was intentionally making those devises to reflect Calvin's dedication and service to her throughout the years. The will was signed and dated February 18, 2011.

Mary Ann died on March 5, 2011. On March 7, a petition was filed to admit the February 18 will to probate and appoint a personal representative. The contestants filed an answer and objection to the petition, claiming that the will was invalid because Mary Ann lacked testamentary capacity and the devises were the result of undue influence. An amended petition was filed on May 10, 2012.

A jury trial on the issues of testamentary capacity and undue influence was held in July and August 2013. The testimony generally established that although Mary Ann's physical health declined, she always retained her mental clarity, understanding, and ability to recognize and converse with various people. There was contradicting evidence presented as to whether Calvin improperly influenced Mary Ann or whether she simply favored him because of his assistance with the farm and support of her with respect to the conservatorship. The video of the will execution of August 2001 was received into evidence at trial as evidence solely on the issue of testamentary capacity, and the jury was given a limiting instruction not to consider the video on the issue of undue influence. The video was played for the jury and sent into the jury room during deliberation.

After the contestants rested, the proponents moved for a directed verdict on testamentary capacity and undue influence. The court denied the motion on the issue of undue influence, but granted the motion for directed verdict on testamentary capacity.

During the jury instruction conference, the contestants offered proposed instructions regarding a presumption of undue influence, which instructions the court declined to give. While the jury was deliberating, it posed a question to the court regarding the burden of proof. The court's response referred the jury back to its prior jury instruction on the burden of proof. Ultimately, the jury found that the will was not the result of undue influence and that therefore it was valid. This timely appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, the contestants assign that the district court erred in (1) sustaining the motion for directed verdict on the issue of testamentary capacity, (2) allowing the video of Mary Ann to be played for the jury, (3) allowing the video to be taken back to the jury room, (4) refusing to instruct the jury as to the presumption of undue influence, and (5) its response to the question from the jury.

The proponents also attempted to cross-appeal on the court's refusal to grant a directed verdict on the issue of undue influence.

## ANALYSIS

*Cross-Appeal.*

[1,2] We first dispose of the proponents' attempted cross-appeal on the court's refusal to grant a directed verdict on the issue of undue influence. We do not reach the merits of their assertion because they failed to follow the requirements for asserting a cross-appeal. A party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant. *Vokel v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009). Thus, the cross-appeal section must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of facts. *Id.* The proponents' separate section entitled "Brief on Cross Appeal" contains nothing more than a one-paragraph argument. Parties wishing to secure appellate review of their claims for relief must be aware of, and abide by, the rules of the Nebraska appellate courts in presenting such claims. See *id.* Therefore, we do not consider the merits of the purported cross-appeal.

*Directed Verdict on*
*Testamentary*
*Capacity.*

[3,4] The contestants claim that the district court erred in directing a verdict on the issue of testamentary capacity. In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013). The party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Id.* A directed verdict is proper at the close of all the

evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Id.*

[5,6] In a contested case, the proponents of a will have the burden of establishing prima facie proof of testamentary capacity. See, Neb. Rev. Stat. § 30-2431 (Reissue 2008); *In re Estate of Mecello*, 262 Neb. 493, 633 N.W.2d 892 (2001). One possesses testamentary capacity if she understands the nature of her act in making a will or a codicil thereto, knows the extent and character of her property, knows and understands the proposed disposition of her property, and knows the natural objects of her bounty. *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994).

[7,8] Prima facie proof of a testator's testamentary capacity is established by the introduction of a self-proved will. *In re Estate of Stephens*, 9 Neb. App. 68, 608 N.W.2d 201 (2000). Such prima facie proof is rebuttable with competent evidence to the contrary. *Id.*

In the present case, the contestants admit that the February 2011 will qualifies as a self-proved will and that therefore the proponents satisfied their initial burden of proof. They argue, however, that the evidence that, at the time the will was executed, Mary Ann was taking so many medications with numerous side effects supports a reasonable inference she lacked testamentary capacity.

The evidence presented at trial did, in fact, establish that Mary Ann was taking numerous potent medications with potential side effects. Contrary to the contestants' claim, however, there was no evidence that Mary Ann actually suffered from any of those side effects. Mary Ann's treating physician specifically testified that he did not observe any of the potential side effects of the medications in Mary Ann. The last time he saw her, in late January 2011, she still had the ability to understand what property she owned, who her children were, and what she was doing. Similarly, according to the witnesses present at the execution of the will, Mary Ann was able to think clearly, knew what she was doing, recognized everyone and called them by name, provided commentary on the contents of her will, and gave reasoning for the disposition of

her property. There was no evidence presented that Mary Ann lacked the requisite awareness or understanding at the time the will was executed. Accordingly, the district court did not err in granting the proponents' motion for directed verdict on the issue of testamentary capacity.

*Video.*

The contestants claim that the district court committed reversible error when it admitted into evidence the video of Mary Ann's executing the 2001 will and allowed it to be played for the jury. They claim that the video was cumulative, its probative value was substantially outweighed by its prejudicial effect, and its admission violated their rights to cross-examine witnesses against them. They claim that it was hearsay to which no exception applies. We disagree.

[9-11] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009). When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Erickson v. U-Haul Internat.*, 278 Neb. 18, 767 N.W.2d 765 (2009). A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of abuse of discretion. *Id.*

[12,13] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Neb. Rev. Stat. § 27-801(3) (Reissue 2008). A statement is defined as an oral or written assertion or nonverbal conduct of a person, if it is intended by him as an assertion. § 27-801(1).

[14] The attorney who drafted the 2001 will and recorded its execution testified that he was "fairly certain" there was going to be a will contest so he went through the preliminary questioning of Mary Ann as to intent before she executed the will and had it video recorded. The video therefore contained assertions made by Mary Ann that would constitute hearsay if

no exception applies. However, Neb. Rev. Stat. § 27-803(2) (Reissue 2008) excludes the following from the hearsay rule:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

We conclude that the video of Mary Ann's executing her will and containing responses to questions posed at that time regarding her state of mind is an exception to the hearsay rule and that the video was therefore properly admitted as evidence. However, toward the end of the video, Mary Ann responded to questions regarding undue influence. These statements, if offered for the truth of the matter asserted, would be hearsay. The district court addressed this issue by instructing the jury that it was not to consider the video to show influence or lack thereof, but only state of mind and testamentary capacity.

[15] The contestants claim that this limiting instruction was ineffective because the probative value of the video was substantially outweighed by the likelihood of unfair prejudice under Neb. Rev. Stat. § 27-403 (Reissue 2008). They claim that because Mary Ann denied in the video that she was unduly influenced by anyone, even a limiting instruction could not "'unring the bell.'" Brief for appellants at 42. The Nebraska Supreme Court has held, however, that where evidence is admissible for some purposes, but not for others, a limiting instruction directing the jury for which purpose the evidence can be considered does not constitute an abuse of discretion. See, e.g., S*hipler v. General Motors Corp.*, 271 Neb. 194, 71 N.W.2d 807 (2006) (approving admission of evidence of similar incidents for purpose of considering defective design and knowledge of manufacturer, but for no other purpose); *Ford v. Estate of Clinton*, 265 Neb. 285, 656 N.W.2d 606 (2003) (approving of admission of evidence with limiting instruction).

Our review of the record leads us to conclude that it was not an abuse of discretion for the district court to admit the video as evidence of Mary Ann's state of mind and play it for the jury, with the limiting instruction given.

The contestants also argue that the video is cumulative of other evidence proffered by the proponents. However, the jury had not observed nor heard, firsthand, from Mary Ann. The video was evidence of her state of mind and testamentary capacity on the date the 2001 will was signed. We therefore reject this assertion.

[16] Finally, the contestants claim that the admission of the video violated their right to cross-examine a witness. While the right to cross-examine a witness is an essential and fundamental requirement of a fair trial, see *State v. Kuehn*, 273 Neb. 219, 728 N.W.2d 589 (2007), it is not absolute, see *State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993) (holding criminal defendant was not denied right to cross-examination when hearsay statement made by woman later murdered was offered into evidence because statement fell within exception to hearsay rule). Section 27-803 and Neb. Rev. Stat. § 27-804(2) (Reissue 2008) provide various situations in which out-of-court statements are admitted as evidence without the declarant being available to testify at trial. As evidenced by § 27-804(2)(e), the touchstone for admission of an out-of-court statement from an unavailable witness is the guarantee of trustworthiness. Therefore, where guarantees of trustworthiness exist, cross-examination of a declarant in a civil case may not be required if the statement sought to be introduced falls within a statutory exception. As stated above, because the present state-of-mind exception allowed admission of the video, and the court properly gave a limiting instruction as to the purpose for which it could be considered, the contestants were not denied their right to cross-examination. We conclude that the district court did not abuse its discretion when it allowed the video into evidence and played it for the jury.

The contestants further claim that the district court erred in allowing the video into the jury room during deliberations. The record does not affirmatively show that the video was taken

into the jury room, but both parties concede that it was. We have no indication, however, that the jury had the necessary equipment to replay the video. See *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000), *disapproved on other grounds, State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012) (in which jury requested playback equipment). Furthermore, we find nowhere in the record where contestants objected to the video's being taken into the jury room. Notwithstanding the absence of any indication that the jury replayed the video, we proceed to address the assigned error.

[17-19] The Nebraska Supreme Court has stated that the jury should not have unrestricted review of a testimonial exhibit. *State v. Dixon, supra*. As to nontestimonial evidence, however, the courts have broad discretion in allowing the jury unlimited access to properly received exhibits that constitute substantive evidence. *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014). In *Vandever*, the Supreme Court noted that Neb. Rev. Stat. § 25-1116 (Reissue 2008) provides a procedure for a deliberating jury to request the court to assist it when a disagreement arises among the jurors as to the testimony presented. The court distinguished between a determination of "whether evidence is 'testimony' for purposes of § 25-1116 [and a] determination of whether a statement is 'testimonial' for purposes of Confrontation Clause analysis." *State v. Vandever*, 287 Neb. at 815-16, 844 N.W.2d at 790. In doing so, it noted that Neb. Rev. Stat. § 25-1240 (Reissue 2008) provides four modes by which testimony of witnesses can be taken, including by affidavit, deposition, oral examination, and video recording of an examination conducted prior to the time of trial for use at trial in accordance with procedures provided by law. The court concluded that

> "testimony" for purposes of § 25-1116 encompasses evidence authorized as "testimony" under § 25-1240, that is, as live testimony at trial by oral examination or by some substitute for live testimony, including but not limited to, affidavit, deposition, or video recording of an examination conducted prior to the time of trial for use at trial. For completeness, we note that videotaped depositions

are statutorily included in the definition of "deposition" in § 25-1242.

*State v. Vandever*, 287 Neb. at 816-17, 844 N.W.2d at 790.

The *Vandever* court concluded that the proposed evidence, an audio recording of an investigator's interview of the defendant, was not testimonial because it was not prepared as or admitted into evidence as a substitute for live testimony at trial. According to the *Vandever* court, the audio recording "was not 'an examination conducted prior to the time of trial for use at trial in accordance with procedures provided by law.'" *Id*. at 817, 844 N.W.2d at 791.

Likewise, we determine that the video of Mary Ann executing her will was not "an examination conducted prior to the time of trial for use at trial in accordance with procedures provided by law." See § 25-1240. Rather, the video shows Mary Ann responding to preliminary questions from her attorney to establish testamentary capacity before executing her will. And while her attorney testified that he video recorded the execution because he anticipated a will contest, the questions he posed to her did not constitute an examination for use at trial "in accordance with procedures provided by law." See *id*. Therefore, the video was nontestimentary evidence and the trial court had broad discretion in allowing the jury unlimited access to it during deliberations.

In light of the limiting instruction given to the jury that it was not to consider the video for any purpose other than testamentary capacity, an issue on which the trial court ultimately directed a verdict in favor of the proponents, we find no abuse of discretion in allowing the jury access to the video during its deliberations.

*Jury Instructions*.

The contestants argue that the district court erred in failing to give their proposed jury instructions regarding undue influence. In a proposed instruction regarding the statement of the case, the contestants sought to instruct the jury that a presumption of undue influence existed because Calvin and/ or his wife, Patricia, had a confidential relationship with

Mary Ann, which was coupled with suspicious circumstances. In a later proposed instruction, the contestants sought to have the jury instructed as follows:

> In connection with this claim of undue influence, the burden is on contestants to establish facts which show that a confidential relationship existed between Mary Ann . . . and her son, Calvin . . . , and/or his wife, Patricia . . . , and the existence of suspicious circumstances. If such facts are established, a presumption of undue influence arises and the burden of going forward with the evidence to rebut the presumption then shifts to the proponent[s].

> The proponent[s] may rebut this presumption by evidence which shows that there was no undue influence or by evidence which shows that Mary Ann . . . had competent independent advice and that [the will] was her own voluntary act.

The district court rejected the proposed jury instructions and instead instructed the jury that the burden of proving undue influence was on the contestants, without any reference to the presumption of undue influence that may arise. The district court stated that the proposed instructions would impermissibly shift the burden of proof from the contestants to the proponents. The contestants argue that the refusal to give their requested instructions was error. We disagree.

[20,21] In a will contest case in which undue influence is claimed, the contestant must prove the following elements by a preponderance of the evidence: (1) The testator was subject to undue influence; (2) there was an opportunity to exercise such influence; (3) there was a disposition to exercise such influence; and (4) the result was clearly the effect of such influence. *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009). The Nebraska Supreme Court has recognized a presumption of undue influence if the contestant's evidence shows a confidential or fiduciary relationship, coupled with other suspicious circumstances. *Id*. Those circumstances include: (1) a vigorous campaign by a principal beneficiary's family to maintain intimate relations with the testator, (2) a lack of advice to the testator from an independent attorney,

(3) an elderly testator in weakened physical or mental condition, (4) lack of consideration for the bequest, (5) a disposition that is unnatural or unjust, (6) the beneficiary's participation in procuring the will, and (7) domination of the testator by the beneficiary. *Id*.

[22] Once the contestant meets this burden of proof, the proponents of the will must rebut the presumption that arises by producing evidence that there was no undue influence. Once they do so, the presumption disappears. See *id*.

[23,24] While the Nebraska Supreme Court has recognized a "presumption" of undue influence in a will contest case, it has also recognized that it is not an evidentiary presumption. See *McGowan v. McGowan*, 197 Neb. 596, 250 N.W.2d 234 (1977). Rather, the presumption of undue influence falls under the ambit of the "bursting bubble" theory of presumptions which holds that when evidence is introduced to rebut the presumption, the presumption disappears and the burden of proof or persuasion does not shift. *Id*. In dealing with this type of presumption, the trial court need only determine that the evidence introduced in rebuttal is sufficient to support a finding contrary to the presumed fact. If that determination is made, there is no need to instruct the jury on the presumption. 2 McCormick on Evidence § 344 (Kenneth S. Broun et al. eds., 7th ed. 2013).

In the present action, the contestants presented evidence that could support a finding of a confidential relationship coupled with suspicious circumstances. For example, Mary Ann moved in with Calvin and Patricia in January 2009 because of her declining health and lived with them until her death. Some of Mary Ann's other children felt as though they were not welcome in Calvin's home to visit Mary Ann. In addition, there was testimony that Mary Ann was adamant she did not want to pay someone to care for her because it was too expensive. However, the contestants admitted into evidence checks written on Mary Ann's account in 2009 and 2010 to Calvin and Patricia, separately, totaling more than $15,000.

The proponents then offered evidence to rebut this presumption. Orin, Goodwater, and Bundy admitted that they did, in fact, visit Mary Ann when she was living with Calvin.

Patricia testified that she is a licensed practical nurse and that Mary Ann would write her checks to reimburse her for the care she was providing because it was less expensive than paying for a nursing home. Further, during the time that Mary Ann lived with Calvin and Patricia, she had her own attorney, with whom she would meet and speak alone, without Calvin or anyone else present. The undisputed evidence established that Mary Ann maintained her mental health until the time of her death, and the proponents offered evidence indicating that Mary Ann repeatedly explained her displeasure with the contestants over the conservatorship and her desire to leave the farm to Calvin because of his assistance to her during her lifetime.

Once the proponents offered their rebuttal evidence, the presumption disappeared and there was no basis upon which the district court should have instructed the jury on the presumption because the presumption no longer existed. See *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009) (stating that where evidence appears to rebut presumption, presumption disappears, and burden of proof remains on party asserting issue). See, also, *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180 (3d Cir. 2011) (holding that as matter of good practice, where party has produced sufficient facts to rebut presumption in civil case, and it drops out of case, trial court should avoid references to such presumption in its instructions).

To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014). While the contestants' tendered instructions contained correct statements of the law, they were not warranted by the evidence because once the proponents offered rebuttal evidence, the presumption disappeared. Since the burden of proof remained on the contestants to prove undue influence, and because the jury instructions given properly placed this burden on the contestants, they

were not prejudiced by the court's failure to give the tendered instructions.

*Jury Question.*

The contestants contend that the district court erred in its response to the question from the jury. The proponents argue that this claim is waived because the contestants failed to object to the court's response at the time.

During deliberation, the jury asked a question about the burden of proof in the case. When discussing the question with the parties' counsel, the court proposed simply referring the jury back to the jury instructions. The contestants requested that the court provide further explanation. After a suggestion from the proponents, the court proposed referring the jury to the specific instruction that defined the burden of proof, to which counsel for the contestants replied, "I don't have any problem with that part, Your Honor."

The proponents contend that because the contestants acquiesced to the proposed response, they are prohibited from now challenging it on appeal. We do not find that the contestants agreed to the court's proposed response. In discussing the court's response, counsel for the contestants argued that the jurors' question indicated that they were confused on the proper burden of proof. The court replied that although they might be confused, the court was going to tell them to refer back to the instructions because the burden of proof is defined. Counsel for the contestants then replied, "Well, I mean, that's my input, Your Honor. I think that it needs to be defined further, but I understand that that's your instruction." The court then offered to specifically refer the jury back to the instruction on the burden of proof and asked whether counsel had "[a]ny problem with that?" Counsel for the contestants then responded that he did not have any problem with "that part." We interpret this exchange as the contestants' making their argument for further explanation, but when the court indicated that it was not willing to do so, the contestants essentially took what they could get by agreeing to the more detailed response. Therefore, because the waiver was not clear and unequivocal, we will address the merits of this assignment of error.

See *Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 472 N.W.2d 372 (1991) (to establish waiver of legal right, there must be clear, unequivocal, and decisive action by party which demonstrates such purpose).

The contestants claim that the district court erred in its response to the jury's question, because the jury was clearly confused on the proper burden of proof and because simply referring them back to the very instruction from which their confusion stemmed substantially impaired the contestants' right to a fair trial. We disagree and find no abuse of discretion in the district court's response.

[25,26] The decision whether to reply to questions from the jury regarding the applicable law is entrusted to the discretion of the trial court. *State v. Gutierrez*, 272 Neb. 995, 726 N.W.2d 542 (2007), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010). The court can, in the exercise of its discretion, refuse to reply to a question from the jury regarding the applicable law. See *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995) (trial court did not abuse its discretion by referring jury to instructions given when jury raised question adequately covered by those instructions).

In the present case, the jury asked the court, "Please explain the difference between Burden of Proof: Greater weight of the Evidence is not the same as having shadow of doubt?" The court responded that the jury should refer back to instruction No. 7, which provided:

> A. GREATER WEIGHT OF THE EVIDENCE: Any party who has the burden of proving a claim must do so by the greater weight of the evidence.
>
> (1) The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true. It does not necessarily mean the greater number of witnesses or exhibits.
>
> (2) Any party is entitled to the benefit of any evidence tending to establish a claim, even though such evidence was introduced by another.
>
> (3) If the evidence upon a claim is evenly balanced, or if it weighs in favor of the other party, then the burden of proof has not been met.

B. Where two inferences may be drawn from the facts proved, which inferences are opposed to each other but are equally consistent with the facts proved, a party having the burden of proof on an issue may not meet that burden by relying solely on the inference favoring that party.

Instruction No. 7 is a correct statement of the law. See, NJI2d Civ. 2.12A; NJI2d Civ. 16.06. Because the question raised by the jury was adequately covered by the instruction given, the district court did not abuse its discretion by referring the jury to the instructions and declining further explanation.

## CONCLUSION

We find no error in the district court's decisions and therefore affirm the judgment.

AFFIRMED.