**Scott LEWIS, Appellant, (Defendant),**

v.

**Joann PLATT, Sharon L. Egan and Lisa Egan, a/k/a the Egan Heirs, Appellees, (Plaintiffs).**

**No. 91-69.**

Supreme Court of Wyoming.

Sept. 4, 1992.

Billie Ruth Edwards, Edwards & Johnson, Cheyenne, for appellant.

Mitchell E. Osborn, Grant & Osborn, Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

THOMAS, Justice.

In this case, we must resolve a problem involving the propriety of the entry of a summary judgment in a case involving a claimed contractual novation. The trial court concluded there was no genuine issue of any material fact and, as a matter of law, there had been no novation. The court then entered a summary judgment in favor of creditors against a defendant who had presented as his theory of defense the effectuation of a novation that released him from liability. We hold that, while the operative facts are clear, reasonable minds could differ as to their legal effect, and the summary judgment must be reversed.

Scott Lewis (Lewis) advances this statement of the issue in his Brief of Appellant:

> 1. Whether the lower court erred in granting summary judgment against Appellant where there were material issues of fact regarding novation, estoppel, and release due to impairment of collateral.

In the Brief of Appellees (whom we shall refer to collectively as the Egan heirs), there is no statement of the issue as such. The Egan heirs content themselves with asserting there is no issue with respect to the facts and, as a matter of law, they do not support the defenses asserted by Lewis of novation, estoppel, or release due to the impairment of collateral.

A chronological review of the transactions involved is helpful to an understanding of this case. In March and April of 1980, Lewis and Jay Palm agreed to buy a majority of the stock in Sky Harbor Air Service, Inc. (Sky Harbor) from Dan Egan

* Chief Justice at time of oral argument.

for $250,000. The consideration included a down payment of $50,000 (one-half paid by Lewis and one-half paid by Palm) and a promissory note in favor of Dan Egan in the amount of $200,000. Edwin Palm, Jay Palm's father, served as a guarantor of the note to Egan. After the stock purchase, Lewis and Jay Palm obtained a Small Business Administration (SBA) loan and, in connection with the granting of that loan, all parties entered into a standby agreement, subordinating Egan's note to the SBA loan. This record does not encompass the authorization for the initial loan commitment, but we recognize that, if the original agreements had been fulfilled, the note to Egan would have been paid prior to the time this litigation was commenced.

After the execution of the stock purchase agreement, Dan Egan was killed in an automobile accident. The Egan heirs succeeded to his interest in the business and to his interest in the promissory note earlier executed by Lewis and Jay Palm. In November of 1982, Lewis sold his interest in Sky Harbor to Jerry Palm, Jay Palm's brother, and Lewis asserts that he was promised that he would be indemnified for any claims made against him, including any claims of the Egan heirs. The consideration for Lewis' interest in Sky Harbor was $25,000 paid by Jerry Palm (the same amount that Lewis had invested).

The following April, the parties involved, except for Lewis, made a new agreement with the SBA. The authorization for the new loan indicates that it was to be used to refund the original SBA loan, which then had been paid down to about $120,000; to consolidate other indebtedness of Sky Harbor; and to provide Sky Harbor with about $50,000 of working capital. At the same time, the Egan heirs made an agreement with the two Palm brothers, which relieved the Egan heirs of any liability for federal taxes owed by Dan Egan for the period preceding his sale of shares in Sky Harbor and, in exchange, the Egan heirs compromised amounts due under the original promissory note. They also agreed to execute a new standby agreement subordinating the debt owed them to the SBA loan.

There is no disagreement among the parties that Lewis was not involved in any of the transactions that occurred after 1982, because he no longer held any interest in Sky Harbor. Yet, the Egan heirs brought this action asserting that Lewis is liable for the sums due under the original promissory note. At the time of action, the amount due was well over $300,000 including interest, because no interest had been paid on the note since early in 1986. Lewis defended, maintaining, among other things, that the events which have been described above resulted in a novation that relieved him of his obligations under the original promissory note.

■ We have identified the four features of a novation as: (1) a previous valid obligation; (2) an agreement of all parties to a new contract; (3) extinguishment of the prior contract; and (4) validity of the new contract. *Tri–State Oil Tool Industries, Inc. v. EMC Energies, Inc.*, 561 P.2d 714, 716 (Wyo.1977). Refinements to that general rule are pertinent in this instance:

A situation can arise where there are two contracts and under certain conditions the second contract will operate as a novation of the first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first.

In keeping with this general rule, it is held that to effect a novation by the substitution of one debtor for another, thereby releasing the first, there must be agreement to that effect between all three parties. But a presumption of an intention to release the first debtor will not arise from a mere taking of the second.

It is not necessary that a novation be in writing or that it be evidenced by express words. Like any other fact it may be proved as an inference from the acts and conduct of the parties.

Whether a new debtor is intended to operate as a release of the liability of the old in the absence of an express agreement to that effect, is usually a question

of fact and can only become a question of law when the state of the evidence is such that reasonable minds cannot differ as to its effect.

15 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 1869, at 615–16 (3rd ed. 1972) (footnotes omitted).

*See Jones v. Wettlin,* 39 Wyo. 331, 271 P. 217, 69 A.L.R. 840 (1928); *Tore, Ltd. v. M.L. Rothschild Management Corp.,* 793 P.2d 1316, *reh'g denied* (Nev.1990).

 We have noted Lewis was not involved in the transaction relating to the second SBA loan, and the question that arises is how the second feature could be satisfied since he was not a party to the new agreement. The law provides that novation can occur at the time of the novation or when a party acquires knowledge of it. WILLISTON § 1870 at 617. In an instance in which the novation is beneficial to a debtor, it properly may be assumed that he consents to his discharge, though he still has a right of disclaimer with respect to being bound by novation. WILLISTON § 1870 at 619. Under the circumstances presented in this case, the finder of fact could conclude that Lewis became a party to the novation when he acquired knowledge of it even though it was executed in his absence. In this regard, it is pertinent to note that the original standby agreement identified Scott Lewis and Jay Palm as the "borrowers" who owed Dan Egan $200,000. In the second standby agreement, Jerry and Jay Palm are identified as the "borrowers" who owed the Egan heirs $189,000. (At that time, Jay Palm was in bankruptcy, and the Egan heirs' claim against Edwin Palm as the guarantor of Jay Palm was settled during the course of this litigation.)

When the applicable refinements relating to the law of novation are invoked in this instance, we are satisfied reasonable minds could differ as to the effect of these circumstances, even in the absence of an express agreement leading to the release of Lewis. The finder of fact could infer that the borrowing of additional money by Sky Harbor of more than $200,000, when coupled with the agreement of the Egan heirs to subordinate the new promissory note to the new loan, and their conduct in entering into the side agreement, all in the absence of the knowledge or participation of Lewis, manifest their assumption and their intention that Lewis was no longer liable on the original promissory note. Under the circumstances, we are impressed with the wisdom of the rule articulated in WILLISTON § 1870 at 617, 619, that the question of whether a new debtor is intended to operate as a release of liability of the old, in the absence of an express agreement, is usually a question of fact.

In our analysis, we find it significant that, in reaching a decision to enter summary judgment, the district court relied, in part, on an analysis of the credibility of Lewis as a witness, as well as the admissibility of certain evidence. In its decision letter, the court noted that Lewis claimed not to have had any contact with Sky Harbor after he sold his interest to Jerry Palm. The court points out that, later in his affidavit, he claims knowledge of many things relating to Sky Harbor based upon "information and belief." The trial court concluded these allegations were, therefore, likely based upon hearsay or, in the alternative, that Lewis was not being "forthright." Those are classic issues that evolve in a trial, particularly the question of credibility. In this regard, it would appear many of Lewis' allegations of fact are supported by other documentation in the record and he might well have had firsthand knowledge of that documentation without having "any contact with" Sky Harbor or its principals.

Satisfied, as we are, that reasonable minds could differ as to the factual conclusion with respect to a novation, we reverse the district court's order granting summary judgment. The case is remanded for further proceedings consistent with this opinion.