# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 105

### APRIL TERM, A.D. 2022

### August 25, 2022

TEP ROCKY MOUNTAIN LLC, a
Delaware limited liability company,
f/k/a WPX ENERGY ROCKY
MOUNTAIN, LLC, a Delaware limited
liability company,

Appellant
(Defendant),

v.                                                                                    S-21-0288

RECORD TJ RANCH LIMITED
PARTNERSHIP, a Wyoming limited
partnership,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Thomas W. Rumpke, Judge

*Representing Appellant:*
    Isaac N. Sutphin, Jeffrey S. Pope, and Macrina M. Sharpe, Holland & Hart LLP,
    Cheyenne, Wyoming.  Argument by Mr. Pope.

*Representing Appellee:*
    Dan B. Riggs, Amanda K. Roberts, and J. Kyle Hendrickson, Lonabaugh and Riggs,
    LLP, Sheridan, Wyoming.  Argument by Mr. Hendrickson.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Record TJ Ranch Limited Partnership (TJ Ranch) sued TEP Rocky Mountain LLC (TEP RM) and Carbon Creek Energy, LLC (Carbon Creek) for payment under a surface use and damage agreement (SUA) governing oil and gas development and production on the ranch lands.  Carbon Creek defaulted and is not a party here.  The district court denied TEP RM's motion to dismiss for lack of personal jurisdiction, granted summary judgment to TJ Ranch on several issues, and, following a bench trial, found TEP RM had breached the agreements and TJ Ranch was entitled to payment.  We affirm.

## ISSUES

[¶2]     TEP RM presents the following issues, which we restate:

> 1.     Did the district court have personal jurisdiction over TEP RM?
>
> 2.     Did the district court err in finding TJ Ranch reasonably withheld its consent for assignment of the SUA?
>
> 3.     Did the district court err in finding TJ Ranch did not novate the SUA?
>
> 4.     Did the district court err by refusing to stay this case pending resolution of a related federal case?

## FACTS

### Surface Use Agreement

[¶3]     TJ Ranch is located in the Powder River Basin of Campbell County and, at all times relevant to this matter, was owned by the Record family.  In 1999, operator Barrett Resources Corporation and the Record family entered into the SUA to govern the development of oil and gas leases on the ranch lands.  Paragraph 47 of the SUA addressed assignment.

> 47.  **Assignment.**  Operator may assign this Agreement, in whole or in part, with the prior written consent of the Owners, which shall not be unreasonably withheld in the case of assignment to a reputable Operator who expressly assumes the obligations of Operator hereunder with the proven financial capability to fully perform all of the Operator's responsibilities under this Agreement, both at the present time and for the reasonably foreseeable term of this Agreement.  In the case, however, that Operator assigns this Agreement

1

without first obtaining such written consent of Owners, then any such assignment by Operator shall not relieve Operator of its obligations hereunder and upon any such assignment, Operator and its assignees and successor assignees shall remain jointly and severally responsible in the full, faithful and complete performance of all promises and obligations undertaken herein by the Operator.

The parties consented to Wyoming district court jurisdiction for any "lawsuit" "arising out of or in conjunction with" the SUA.

[¶4]    Over time, the Record family transferred its interests in the ranch and SUA to TJ Ranch, and different companies took over as operator under the SUA. The various operators developed coal bed methane gas wells and associated infrastructure, including roads, pipelines, reservoirs, and irrigation facilities on the ranch lands. From 1999 through 2008, TJ Ranch and the operators amended the SUA and entered into agreements for additional facilities, but the changes did not alter the parties' obligations to each other in any relevant way. WPX Energy Rocky Mountain, LLC (WPX RM), which was solely owned by WPX Energy Holdings, LLC (WPX Holdings), took over as operator under the SUA in 2012.

### WPX RM's Sale of Gas Interests and Assignment of the SUA to Moriah/Carbon Creek

[¶5]    On July 31, 2015, WPX RM sent a letter to TJ Ranch seeking its consent for WPX RM's assignment of the SUA to Moriah Powder River, LLC (Moriah). The letter stated WPX RM "has entered into" an agreement, "effective January 1, 2015," to sell all its Powder River Basin methane assets, including those located on TJ Ranch property, to Moriah. Referencing the SUA, WPX RM asked TJ Ranch to "indicate [its] consent and approval of the assignment . . . by signing in the space" at the bottom of the letter and returning it to WPX RM within five days of receipt. The letter said that if TJ Ranch had any questions or needed additional information, it should contact the WPX RM landman who sent the letter. WPX RM did not include any additional information about the sale or Moriah with its consent letter.

[¶6]    In deciding whether to consent to the assignment, the principals for TJ Ranch, Jerry and Sarah Record, researched Moriah online. They discovered the company had "just been formed" but could not locate any information about Moriah's financial condition or reputation in the oil and gas industry. TJ Ranch did not return the consent form to WPX RM, nor did WPX RM make any additional effort to communicate with TJ Ranch about the sale to Moriah or the assignment. Despite TJ Ranch's failure to approve the assignment, the sale closed on September 1, 2015, and WPX RM assigned the SUA to Moriah.

**Sale of WPX RM Membership Interest and Change of Name to TEP RM**

[¶7] In 2016, WPX Holdings sold its 100% membership interest in WPX RM to Terra Energy Partners LLC (Terra Energy). The Membership Interest Purchase Agreement (MIPA) stated WPX RM's assets did not include "rights, title and interests in the real and personal property interests, leasehold interests and other assets and interests set forth in Exhibit H." The list of excluded assets in Exhibit H included "[a]ny and all obligations arising out of the terms and conditions of the Purchase and Sale Agreement . . . between [WPX RM] and Moriah . . . ." After purchasing the membership interest, Terra Energy changed WPX RM's name to TEP RM. Because WPX RM had transferred its Wyoming assets and operations to others before Terra Energy bought WPX Holdings' ownership interest in WPX RM, the renamed LLC -- TEP RM -- did not have any ongoing operations or assets in Wyoming.

**Forbearance Agreement and Default**

[¶8] Also in 2016, Carbon Creek, a sister company formed by Moriah to operate its gas interests, contacted TJ Ranch seeking a discount on the 2016 SUA payment because gas prices were low. TJ Ranch agreed to a five percent discount because the Records believed it "would be worth the goodwill that [the ranch] might be able to acquire with the new companies and also to foster a good working relationship with them." Carbon Creek remitted the discounted 2016 payment.

[¶9] In 2017, Carbon Creek tendered $444,441.73 to TJ Ranch for its annual SUA payment. TJ Ranch rejected Carbon Creek's payment and sent notices of default to Carbon Creek and WPX RM, claiming it was owed an annual payment of more than $1,000,000. At the time, TJ Ranch was not aware that WPX Holdings had sold its membership interest in WPX RM to Terra Energy or that WPX RM's name had been changed to TEP RM. Carbon Creek thereafter informed TJ Ranch it would be "indemnifying WPX."

[¶10] TJ Ranch and Carbon Creek eventually agreed TJ Ranch would forbear filing suit to enforce the payment terms of the SUA provided Carbon Creek complied with a modified payment schedule based upon the price of natural gas (Forbearance Agreement). Carbon Creek's 2017 payment under the terms of the Forbearance Agreement was $725,000.

[¶11] The Forbearance Agreement expressly ratified the SUA and stated "[s]ubject to its duty to forbear as provided in this [a]greement, [TJ Ranch] reserves all rights under the [SUA], including its right to hold [Carbon Creek's] predecessors-in-interest liable for the performance of all obligations" under the SUA after exercising its right to terminate the Forbearance Agreement. The Forbearance Agreement's termination provision provided that if Carbon Creek failed to "timely make any payment," TJ Ranch would notify Carbon

Creek of the breach and its right to cure within 60 days. If Carbon Creek did not cure, the Forbearance Agreement became "null and void." The parties further agreed:

> To avoid any doubt and by way of example, in the event this [a]greement is terminated by [TJ Ranch] . . . in the year 2020, [TJ Ranch] shall be entitled to recover from [Carbon Creek] and its respective predecessors-in-interest all sums owed under [the SUA] for the years 2017, 2018, 2019, and 2020 . . . less any sums received in those years from [Carbon Creek]."

[¶12] Carbon Creek paid in accordance with the Forbearance Agreement until 2020, when it defaulted after Moriah (n/k/a US Realm Powder River, LLC) declared bankruptcy. TJ Ranch sent notices of default to Carbon Creek and the WPX Energy entities. Instead of responding directly to the notice of default, WPX Energy, Inc. (the parent company of the WPX entities) filed a declaratory judgment action against TJ Ranch in the United States District Court for the District of Wyoming, seeking a declaration that WPX Energy, Inc., and by association all WPX entities, were not liable under the SUA because TJ Ranch "executed a new contract with Carbon Creek that superseded and replaced any prior obligations."

### Course of Proceedings in the Case at Bar

[¶13] After WPX Energy, Inc. filed its federal declaratory judgment action, TJ Ranch brought this suit for breach of the SUA in the Wyoming district court for Campbell County. TJ Ranch originally named only Carbon Creek and WPX RM as defendants. Once it learned WPX RM had changed its name, TJ Ranch amended its complaint to designate TEP RM f/k/a WPX RM and Carbon Creek as defendants.

[¶14] Carbon Creek defaulted. TEP RM filed a motion to dismiss the action, claiming the district court lacked personal jurisdiction over it because it did not have minimum contacts with the State of Wyoming. The district court denied TEP RM's motion to dismiss because WPX RM had sufficient contacts with Wyoming and WPX RM's contacts should be imputed to TEP RM. The district court also denied TEP RM's request to stay the state court action pending resolution of WPX Energy, Inc.'s federal case.

[¶15] Thereafter, the parties filed cross motions for summary judgment. TJ Ranch asserted it was entitled to summary judgment for several reasons: 1) WPX RM remained liable under the SUA because it did not obtain TJ Ranch's prior written consent for its assignment to Moriah; 2) when Carbon Creek defaulted, the Forbearance Agreement became null and void and TJ Ranch retained all rights under the SUA, including its right to performance from Moriah/Carbon Creek's predecessor-in-interest, WPX RM; and 3) TEP RM assumed WPX RM's liability to TJ Ranch.

4

[¶16]   TEP RM countered that it was entitled to summary judgment because, in relevant part:  1) it was unreasonable for TJ Ranch to withhold consent for the assignment to Moriah; 2) TEP RM was not liable for WPX RM's obligations under the SUA because the MIPA was a simple asset sale, which specifically excluded liability for interests already transferred to Moriah; or 3) TJ Ranch impliedly or equitably novated the SUA by entering into the Forbearance Agreement with Carbon Creek.

[¶17]   The district court denied TEP RM's motion for summary judgment and granted, in part, and denied, in part, TJ Ranch's motion for summary judgment.  The court determined, as a matter of law:  1) TEP RM was liable for WPX RM's debts because under the terms of the MIPA, TEP Energy purchased WPX Holdings' membership interest in WPX RM rather than WPX RM's assets; and 2) the Forbearance Agreement did not expressly novate the SUA.  The district court found genuine issues of material fact precluded summary judgment as to whether:  1) TJ Ranch impliedly novated the SUA through its conduct; and 2) TJ Ranch unreasonably withheld consent for the assignment from WPX RM to Moriah.  The court also denied TEP RM's renewed motion for a stay.

[¶18]   After a bench trial on the outstanding factual questions, the district court granted judgment in favor of TJ Ranch and against TEP RM and Carbon Creek, holding them jointly and severally liable for the amounts due under the SUA, which totaled $2,331,835.31.  TEP RM appealed.

## DISCUSSION

### *Personal Jurisdiction*

[¶19] The district court assumed personal jurisdiction over TEP RM.  "Personal jurisdiction refers to the power of a court to make an adjudication applicable to a [defendant]." *Pilcher v. Elliott,* 2020 WY 130, ¶ 16, 473 P.3d 1251, 1255 (Wyo. 2020); *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 38, 367 P.3d 619, 628 (Wyo. 2016).  The determination of whether a district court properly exercised personal jurisdiction over a defendant may present mixed questions of law and fact. *Black Diamond Energy Partners 2001-A Ltd. v. S & T Bank,* 2012 WY 84, ¶ 17, 278 P.3d 738, 742 (Wyo. 2012).  However, when the relevant facts are undisputed, the jurisdictional issue is a matter of law reviewed de novo. *Id.,* ¶¶ 17-18, 278 P.3d at 742 (citing *Cheyenne Publ'g, LLC v. Starostka,* 2004 WY 88, ¶ 10, 94 P.3d 463, 469 (Wyo. 2004), and *O'Bryan v. McDonald,* 952 P.2d 636, 638 (Wyo. 1998)). *See also, Meyer v. Hatto,* 2008 WY 153, ¶ 14, 198 P.3d 552, 555 (Wyo. 2008) (in the face of undisputed facts, "[t]he question of whether personal jurisdiction can properly be exercised in Wyoming is . . .  a question of law to be reviewed de novo").

[¶20] Wyoming's long-arm statute allows courts to exercise jurisdiction over a non-resident defendant "on any basis not inconsistent with the Wyoming or United States constitution." Wyo. Stat. Ann. § 5-1-107(a) (LexisNexis 2021). "Due process requires that the defendant have certain 'minimum contacts' with the forum state such that the exercise of jurisdiction over [it] does not offend 'traditional notions of fair play and substantial justice.' *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)." *Black Diamond Energy,* ¶ 19, 278 P.3d at 743 (quoting *Amoco Prod. Co. v. EM Nominee P'ship Co.,* 886 P.2d 265, 267 (Wyo. 1994) (some quotation marks omitted). *See also, H&P Advisory Ltd. v. Randgold Res. Ltd.,* 2020 WY 74, ¶ 10, 465 P.3d 433, 437 (Wyo. 2020). A state court acquires personal jurisdiction if the defendant "'purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Black Diamond Energy,* ¶ 20, 278 P.3d at 743 (quoting *Olmstead v. Am. Granby Co.,* 565 P.2d 108, 112 (Wyo. 1997)). The traditional three-part test for specific personal jurisdiction requires:

> First, [the defendant] must have purposefully availed [itself] of the privilege of acting in Wyoming or of causing important consequences in Wyoming. Second, [the plaintiff's] cause of action must arise from consequences in Wyoming of the [defendant's] activities. Finally, [the defendant's] activities or the consequences of those activities must have a substantial enough connection with Wyoming to make the exercise of jurisdiction over [the defendant] reasonable.

*H & P Advisory*, ¶ 12, 465 P.3d at 438 (citations, quotations, and footnote omitted).

[¶21] The district court exercised personal jurisdiction over TEP RM by holding it responsible for WPX RM's contacts with Wyoming. TEP RM stated in its opening appellate brief that it "d[id] not dispute WPX RM's contacts [met] the test for personal jurisdiction," but asserted the district court erred by "imputing" WPX RM's contacts to TEP RM. TJ Ranch accepted TEP RM's concession of the sufficiency of WPX RM's contacts with Wyoming in formulating its response to TEP RM's jurisdictional claim. Notwithstanding its earlier statement, TEP RM asserted in its reply brief that WPX RM "does not have the necessary contacts to justify" the Wyoming court's exercise of personal jurisdiction. Although TEP RM "d[id] not dispute" WPX RM "operated in Wyoming for several years, purposely availing itself of the State," TEP RM maintained traditional notions of fair play and substantial justice were offended by Wyoming's exercise of personal jurisdiction over WPX RM because it ceased operations in the state five years before TJ Ranch filed suit.

[¶22] We reject TEP RM's argument for two reasons. First, TEP RM misuses the reply briefing procedure. An appellant is entitled to file a reply brief in response to "new issues and arguments" raised in an appellee's brief. Wyoming Rule of Appellate Procedure

(W.R.A.P.) 7.03(a). TJ Ranch did not raise a new issue. It simply accepted TEP RM's statement that WPX RM's contacts with Wyoming were sufficient for personal jurisdiction. It was TEP RM that presented a new issue, which is not proper use of a reply brief. *Ultra Res., Inc. v. McMurry Energy Co.,* 2004 WY 121, ¶ 11, 99 P.3d 959, 963 (Wyo. 2004) ("'questions not raised in the [appellant's] original brief are deemed waived and will not be considered when raised for the first time in the reply brief'" (quoting *Lunney v. S. Ry. Co.,* 133 So.2d 247, 249 (Ala. 1961))).

[¶23] Second, TEP RM's argument that Wyoming could not exercise personal jurisdiction over WPX RM is baseless. As the district court correctly stated in its order denying TEP RM's motion to dismiss, "[i]t is beyond cavil that WPX [RM] has substantial contacts with Wyoming as it was the previous operator under the SUA[] at issue. These specific contacts relate directly to the cause of action that is the subject of this case and justify the [c]ourt exercising jurisdiction" over WPX RM. There is no question that WPX RM purposefully availed itself of the privilege of acting in Wyoming. *H&P Advisory Ltd.*, ¶ 12, 465 P.3d at 438. For years, WPX RM operated the gas production activities on TJ Ranch under the terms of the SUA. TJ Ranch's claims arose directly from the "consequences in Wyoming" of WPX RM's failure to perform the duties assigned to it in the SUA, making the district court's "exercise of jurisdiction . . . reasonable." *Id.* There is nothing unfair or unjust about a Wyoming court assuming jurisdiction over a party which assertedly owes a continuing contractual duty to a Wyoming landowner for activities on its land.

[¶24] Given WPX RM had sufficient contacts with Wyoming for the district court to exercise personal jurisdiction over it and TEP RM does not, under that name, have any such contacts, the question is whether the district court properly exercised jurisdiction over TEP RM by holding it responsible for WPX RM's activities in Wyoming. "A corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor." *Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1132 (10th Cir. 1991) (citing *City of Richmond v. Madison Mgmt. Grp.,* 918 F.2d 438, 454 (4th Cir. 1990)); *Ostrem v. Prideco Secure Loan Fund, LP,* 841 N.W.2d 882, 896 (Iowa 2014) ("permitting imputation of contacts if successor [would be] liable for actions of predecessor under forum law" (citing *Williams,* 927 F.2d at 1132)). We are, therefore, taxed with determining whether Wyoming law would hold TEP RM responsible for WPX RM's actions.

[¶25] Terra Energy purchased WPX Holdings' 100% membership interest in WPX RM and changed the name of the company to TEP RM. "Certain business entities, such as corporations and LLCs, are separate and distinct from their owners." *Mantle v. N. Star Energy & Constr. LLC,* 2019 WY 29, ¶ 126, 437 P.3d 758, 798 (Wyo. 2019). *See also,* Wyo. Stat. Ann. § 17-29-104(a) (LexisNexis 2021) (a limited liability company is "an entity distinct from its members"). "Generally, this separateness of identity insulates the entity's owners from personal liability for the entity's obligations, liabilities, and debts." *Mantle,* ¶ 126, 437 P.3d at 798-99 (citing 1 Fletcher Cyc. Corp. § 14 (database updated

7

September 2018)). *See also, Pilcher,* ¶ 11, 473 P.3d at 1254 ("The distinction [of identity between an entity and its owners] separates the rights and liabilities of the [entity] from those of its members and owners.").

[¶26]   The separateness of a business entity and its owners also means a "sale or purchase of stock [or membership interests] does not eliminate the [entity's] debts and obligations because the legal entity remains the same." *Sinquefield v. Sears Roebuck & Co.,* 568 N.E.2d 325, 326 (Ill. App. Ct. 1991).   A change of business interest ownership does not affect the business entity's "contract rights or liabilities." *First Am. Title Ins. Co. v. Nw. Title Ins. Agency,* 906 F.3d 884, 891 (10th Cir. 2018) (citing 11 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 5100 (2011)).  Applying this rule, Terra Energy's purchase of WPX Holdings' sole membership interest in WPX RM did not affect WPX RM's responsibilities under the SUA to TJ Ranch.

[¶27]   Similarly, when a business entity changes its name, it is "not relieved of obligations incurred under the old name." *Victory Lake Marine, Inc. v. Velduis,* 621 N.W.2d 306, 310-11 (Neb. Ct. App. 2000) (discussing *Pilsen Brewing Co. v. Wallace,* 125 N.E. 714, 715-16 (Ill. 1919)).  A business name change does not affect the entity's contractual liability.  18 Am.Jur.2d *Corporations* § 234.  *See also, Victory Lake Marine,* 621 N.W.2d at 311 ("'[a] change of corporate name does not make a new corporation, but only gives the corporation a new name'" (quoting *W.T. Rawleigh Medical Co. v. Bunning,* 176 N.W. 85, 86 (Neb. 1920))).  Thus, under general legal principles, neither WPX Holdings' sale of the WPX RM membership interest to Terra Energy nor the change of WPX RM's name to TEP RM affected the company's continuing liability under the SUA to TJ Ranch.

[¶28] Nevertheless, TEP RM asserts it cannot be held responsible for WPX RM's activities in Wyoming because it is not a "mere continuation" of WPX RM and/or there was no "de facto merger" between WPX RM and TEP RM.  It points out that TEP RM does not share any officers, directors, or shareholders with any WPX entity.  Both of TEP RM's arguments are premised on the transaction between WPX Holdings and Terra Energy being a simple sale of the assets of WPX RM rather than a sale of the membership interest.

[¶29]   In the usual case, an entity "that purchases or otherwise acquires [only] the assets of [the selling entity] does not assume the debts and liabilities of the [selling entity.]" *Bud Antle, Inc. v. E. Foods, Inc.,* 758 F.2d 1451, 1456 (11th Cir. 1985) (citing *Kemos, Inc. v. Bader,* 545 F.2d 913, 915 (5th Cir. 1977)).  Stated another way, subject to certain exceptions, "[t]he general rule of successor liability in the context of asset purchase agreements is that [an entity] which purchases the assets of another [entity] does not succeed to the liabilities" of the seller.  *Columbia Propane, L.P. v. Wis. Gas Co.,* 661 N.W.2d 776, 784 (Wis. 2003) (citations and quotations omitted).  *See also, Gladstone v. Stuart Cinemas, Inc.,* 878 A.2d 214, 220 (Vt. 2005) (in a simple sale of assets, "the purchasing corporation assumes no liabilities of the selling corporation" unless an exception applies); *Alcan Aluminum Corp. v. Elec. Metal Prods., Inc.,* 837 P.2d 282, 283

8

(Colo. App. 1992) (subject to certain exceptions, "a corporation which acquires the assets of another corporation does not become liable for the debts of the selling corporation"). The court in *Sinquefield,* 568 N.E.2d at 326, nicely summarized the dichotomy: "A mere sale or purchase of stock does not eliminate the [entity's] debts and obligations because the legal entity remains the same," but "[g]enerally[] when one [entity] sells its assets to another [entity], the seller's liabilities do not become a part of the successor [entity]" unless a specific exception applies. *Id.* (citations and emphasis omitted).

[¶30] TEP RM's arguments that it is not responsible for WPX RM's contractual obligations because it is not a "mere continuation" of the company and/or there was no "de facto merger" between the companies are exceptions to the general rule that a buyer in an asset-only transaction does not assume the seller's obligations. The exceptions apply when: "(1) the buyer expressly or impliedly agree[s] to assume such debts; or (2) the *transaction amounts to a de facto merger of the buyer and seller*; or (3) *the buying corporation is a 'mere continuation' of the selling corporation*; or (4) the transaction is entered into fraudulently in order to escape liability for such debts." *Bud Antle,* 758 F.2d at 1456 (citing *Acheson v. Falstaff Brewing Corp.,* 523 F.2d 1327, 1329-30 (9th Cir. 1975)). *See also, Columbia Propane,* 661 N.W.2d at 784 (listing four exceptions to the general rule of nonliability for a purchaser of a seller's assets). Some jurisdictions add a fifth exception for cases where the purchaser gave inadequate consideration for the sale. *Gladstone,* 878 A.2d at 220 (citation omitted).

[¶31] The "mere continuation" and "de factor merger" exceptions relied on by TEP RM do not come into play unless the sale of WPX RM was an asset-only sale. The district court ruled "the plain language of the [MIPA] simply belies any claim this was an asset purchase agreement." We agree.

[¶32] The MIPA included a choice of law provision requiring it to be interpreted in accordance with Colorado law. Like Wyoming, Colorado courts interpret unambiguous contracts as a matter of law, using the "plain and ordinary meaning" of the contractual terms to determine the intent of the contracting parties. *City of Aurora v. N. Colo. Water Conservancy Dist.,* 236 P.3d 1222, 1226 (Colo. 2010) (en banc) (citations omitted); *In re Est. of Gadash,* 413 P.3d 272, 277 (Colo. App. 2017) (interpretation of an unambiguous contract is a question of law). *See also, Ecocards v. Tekstir, Inc.,* 2020 WY 38, ¶ 18, 459 P.3d 1111, 1118 (Wyo. 2020) (Wyoming courts "interpret unambiguous contracts as a matter of law"), and *Thornock v. PacifiCorp,* 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016) (Wyoming courts give the words in a contract "'the plain meaning that a reasonable person would give to them'" (quoting *Claman v. Popp,* 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012))).

[¶33] As we stated earlier, the agreement between WPX Holdings and Terra Energy (the MIPA) was titled "Membership Interest Purchase Agreement." WPX Holdings agreed to "sell, transfer, assign, convey and deliver" to Terra Energy "the Membership Interests . . .

9

and [Terra Energy] agree[d] to purchase, acquire and accept the Membership Interests." "Membership Interests" were defined as "100% of the issued and outstanding membership interests of [WPX RM], a Delaware limited liability company."

[¶34]  Although the MIPA contained lists of assets included and excluded as property of WPX RM, there is no indication the parties intended the MIPA to act as an asset-only transaction rather than a global transfer of the sole membership interest in the company. As the district court pointed out, the listing of WPX RM's assets was important to other aspects of the sale such as addressing tax consequences.  The asset lists were also used to define WPX Holdings' and WPX Energy, Inc.'s indemnification obligations to Terra Energy.  Because Terra Energy's purchase of WPX RM from WPX Holdings through the MIPA was not an asset-only sale, the "mere continuation" and "de facto merger" exceptions do not apply in its case.

[¶35]  TEP RM also claims that because the TJ Ranch assets and the SUA were contained in the list of assets excluded from the MIPA transaction, WPX Holdings and Terra Energy intended to insulate TEP RM from any liability WPX RM might incur as a result of Moriah/Carbon Creek's failure to perform the SUA.  While Terra Energy and WPX Holdings were entitled to allocate the risks and responsibilities under the SUA between themselves, they did not have the ability to divest TJ Ranch of a contractual right.  As we stated in *Pennaco Energy, Inc. v. KD Co. LLC,* 2015 WY 152, ¶ 17, 363 P.3d 18, 23 (Wyo. 2015), "'one who owes money or is bound to any performance whatsoever cannot by its own act, or by any act in agreement with anyone else . . . divest itself of the duty and substitute the duty of another'" (quoting Samuel Williston, *Williston on Contracts,* § 74.27, 412-413 (4th ed. 2003)).  *See also,* Restatement (Second) of Contracts, § 318(3) ("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor.").  The MIPA did not defeat TJ Ranch's continuing right to hold TEP RM responsible under the SUA.

[¶36]  TEP RM remained obligated for WPX RM's debts and contractual responsibilities in Wyoming, including performance under the SUA.  TJ Ranch and the operators (which included TEP RM f/k/a WPX RM) expressly "consent[ed] to the jurisdiction" of the Wyoming district court for any "lawsuit . . . arising out of or in conjunction with" the SUA. Additionally, TEP RM f/k/a WPX RM clearly had the requisite minimum contacts with Wyoming because it purposely availed itself of the privilege of doing business in Wyoming and the district court's exercise of jurisdiction over it did not offend "traditional notions of fair play and substantial justice." *Black Diamond Energy,* ¶ 19, 278 P.3d at 743 (quotation marks and citation omitted).  The district court properly exercised personal jurisdiction over TEP RM.

***Sufficiency of the Evidence to Support the District Court's Findings of Fact***

[¶37] After the bench trial, the district court found, in relevant part: 1) TJ Ranch reasonably withheld its consent for WPX RM's assignment of the SUA to Moriah, and 2) TJ Ranch did not, through its conduct with Carbon Creek, novate the SUA. TEP RM claims these findings were not supported by the trial evidence. We review a district court's findings of fact after a bench trial "'for clear error and its conclusions of law de novo.'" *Ailport v. Ailport,* 2022 WY 43, ¶ 36, 507 P.3d 427, 440 (Wyo. 2022) (quoting *Wheeldon v. Elk Feed Grounds House, LLC,* 2021 WY 71, ¶ 11, 488 P.3d 916, 919 (Wyo. 2021)). *See also, Shriners Hosps. For Children v. First N. Bank of Wyo.,* 2016 WY 51, ¶ 27, 373 P.3d 392, 403 (Wyo. 2016) ("Findings of fact will not be set aside unless they are clearly erroneous.") (citation and quotation marks omitted).

> While the [factual findings of a judge] are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. . . . A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
>
> [*Moore v. Wolititch,* 2015 WY 11, ¶ 9, 341 P.3d 421, 423 (Wyo. 2015)] (quoting *Miner v. Jesse & Grace, LLC,* 2014 WY 17, ¶ 17, 317 P.3d 1124, 1131 (Wyo. 2014)). "'We assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.'" *Id.,* ¶ 10, 341 P.3d at 423 (quoting *Miner,* ¶ 17, 317 P.3d at 1131).

*Shriners Hosps.,* ¶ 27, 373 P.3d at 403 (quoting *Wimer v. Cook,* 2016 WY 29, ¶ 9, 369 P.3d 210, 215 (Wyo. 2016)) (some quotation marks omitted). Resolution of these issues requires interpretation of the SUA.

> We interpret unambiguous contracts as a matter of law. *Fix v. Forelle,* 2014 WY 79, ¶ 16, 327 P.3d 745, 749 (Wyo. 2014) (citing *Fayard v. Design Comm. Of Homestead Subdivision,* 2010 WY 51, ¶ 12, 230 P.3d 299, 303 (Wyo. 2010)). Consequently, we review the district court's interpretation of the contract de novo. *Finley Res., Inc. v. EP*

*Energy E&P Co., L.P.,* 2019 WY 65, ¶ 7, 443 P.3d 838, 842 (Wyo. 2019).

*Ecocards*, ¶ 18, 459 P.3d at 1118.

### 1. Consent to Assignment

[¶38] The SUA addressed WPX RM's continuing obligations to TJ Ranch after the assignment to Moriah. WPX RM was allowed to assign its responsibilities to another operator regardless of whether TJ Ranch consented. However, if WPX RM failed to secure TJ Ranch's prior written consent, the assignment would not "relieve" WPX RM of "its obligations [under the SUA]" and WPX RM would "remain jointly and severally responsible" with its assignees for "complete performance" of all the SUA obligations. TJ Ranch was not permitted to "unreasonably" withhold consent for WPX RM's assignment of the SUA to "a reputable [o]perator . . . with the proven financial capability to fully perform all of the [o]perator's responsibilities under [the SUA], both at the present time and for the reasonably foreseeable term" of the SUA.

[¶39] TJ Ranch did not give WPX RM prior written consent to its assignment of the SUA to Moriah. The district court held a bench trial to resolve the factual issues pertaining to whether TJ Ranch's refusal to consent to the assignment was reasonable. The court ruled TEP RM had the burden of proving Moriah was "reputable and able to pay the SUA payments for the foreseeable future." TEP RM told the court it accepted the allocation of the burden of proof, and it does not challenge the district court's ruling on appeal. We will, therefore, use the same burden of proof when reviewing the district court's findings of fact and the trial evidence.

[¶40] The district court made several findings which separately, and together, led it to conclude that TJ Ranch reasonably withheld its consent for WPX's assignment of the SUA to Moriah.

- TJ Ranch reasonably believed the assignment had already occurred when WPX RM sent the letter seeking consent.
- WPX RM did not provide TJ Ranch with any information about Moriah; the Records' research did not reveal any information other than the company had recently been formed; and WPX RM gave TJ Ranch a mere five days to return the consent form.
- TEP RM failed to prove Moriah was a reputable operator.
- TEP RM failed to demonstrate Moriah had the proven financial capability to perform all the operator's responsibilities under the SUA.

We will address each finding in turn.

[¶41]  The trial evidence supports the district court's finding that TJ Ranch reasonably believed the assignment to Moriah had already taken place when it received WPX RM's letter seeking consent.  To reiterate, on July 31, 2015, WPX RM sent a letter to TJ Ranch seeking consent for its assignment of the SUA to Moriah.  The letter stated WPX RM "has entered into" an agreement, "effective January 1, 2015," to sell all its Powder River Basin assets, including those located on TJ Ranch property, to Moriah.  WPX RM asked TJ Ranch to consent to the assignment "by signing in the space" at the bottom of the letter and returning it to WPX RM within "five days of [TJ Ranch's] receipt."  The letter said that if TJ Ranch had any questions or needed additional Information, it should contact the WPX RM landman who sent the letter.  WPX RM did not include any additional information about the sale or Moriah with its consent letter.

[¶42]  Sarah Record testified she believed WPX RM was seeking retroactive consent for an assignment made on January 1, 2015.  Don Davis, retired vice president for business development for WPX Energy, Inc., testified the WPX RM-Moriah sale did not close until September 1, 2015, but conceded WPX RM did not convey that information to TJ Ranch.  Since WPX RM had the right to assign the SUA without TJ Ranch's consent, it was logical for TJ Ranch to believe WPX RM's July 31 letter was not seeking *prior* written consent to the assignment, which was required by the SUA for WPX RM to be relieved of its contractual obligations.

[¶43]  The trial record also supports the district court's finding that TJ Ranch reasonably withheld consent to the assignment.  WPX RM gave TJ Ranch only five days to review the letter requesting consent and return a signed copy.  Despite this short deadline, WPX RM provided no information to TJ Ranch about Moriah except its name.  After receiving the letter, the Records researched Moriah online and learned the company had been formed only recently and did not have an online reputation.  The Records were not privy to any information about Moriah's reputation as a coal bed methane operator or its financial wherewithal to meet the obligations of the SUA.

[¶44]  TEP RM claims the trial evidence demonstrates WPX RM followed industry practices when it sought TJ Ranch's consent for the assignment to Moriah.  Mr. Davis and Tiffany Pollock, Terra Energy's vice president of land, testified that, when requesting landowner consent for an assignment, operators typically do not provide information about a proposed assignee's finances or its reputation and experience in the oil and gas industry unless the landowner asks for it.  Mr. Davis stated WPX RM's consent letter, with its offer to provide more information upon request, was intended to start a discussion with TJ Ranch about the assignment.  TEP RM maintains this evidence shows WPX RM complied with its duty under the SUA by providing Moriah's name and it was TJ Ranch's responsibility to request additional information if necessary to its decision about whether to consent to the assignment.

13

[¶45] The district court ruled TEP RM's reliance on industry practices to interpret the SUA was misplaced. Neither party in this case argues the SUA assignment provision is ambiguous, and we agree. "When the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties." *Thornock,* ¶ 13, 379 P.3d at 180 (quoting *Claman,* ¶ 26, 279 P.3d at 1013) (other citations omitted). We give the words in the contract the plain meaning a reasonable person would give them. *Id.* However, when an otherwise unambiguous term had a "different, special, or technical usage at the time the contract was executed," courts may "'consider the circumstances surrounding execution of the agreement'" such as industry practices or norms, to determine the parties' intention. *Id.,* ¶¶ 19-21, 379 P.3d at 181-82 (quoting *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 22, 226 P.3d 889, 905 (Wyo. 2010), and citing *Hickman v. Groves*, 2003 WY 76, ¶ 11, 71 P.3d 256, 259-60 (Wyo. 2003) (considering evidence of the common use of the term "oil rights" in a contract executed in 1944), *Caballo Coal Co. v. Fidelity Expl. & Prod. Co.,* 2004 WY 6, ¶ 11, 84 P.3d 311, 314-17 (determining whether the term "minerals" included coal bed methane), and *Ecosystem Res., L.C. v. Broadbent Land & Res., LLC*, 2012 WY 49, ¶ 12, 275 P.3d 413, 418 (Wyo. 2012) (considering the use of the term "timber" in contracts executed in the early 1900's) (other citations omitted)). *See also, Gumple v. Copperleaf Homeowners Ass'n, Inc.,* 2017 WY 46, ¶ 58, 393 P.3d 1279, 1296 (Wyo. 2017) and *Schell v. Scallon,* 2019 WY 11, ¶ 22, 433 P.3d 879, 887 (Wyo. 2019) (discussing *Thornock*). TEP RM does not direct us to any language in the SUA with a technical meaning to warrant consideration of its "industry practices" evidence.

[¶46] The plain language of the SUA did not require TJ Ranch to request information about Moriah from WPX RM. The SUA clearly stated that before TJ Ranch had an obligation to consent, WPX RM needed to provide an assignee which qualified as a "reputable [o]perator" with "the proven financial capability to fully perform all the [o]perator's responsibilities under [the SUA], both at the present time and for the reasonably foreseeable term." The court did not err by rejecting TEP RM's efforts to shift WPX RM's contractual responsibility to provide an appropriate assignee to TJ Ranch by requiring it to sleuth out information about Moriah's reputation and financial wherewithal.

[¶47] In any event, the dispute over the parties' respective duties regarding the exchange of information about Moriah is largely academic. The district court concluded TEP RM failed to provide any evidence at trial demonstrating Moriah was a reputable operator with the financial capability to fully perform under the SUA. The record supports its findings.

[¶48] Mr. Davis testified a "reputable operator" would, by definition, have a good reputation in the oil and gas industry. "Reputation" is defined as "overall quality or character as seen or judged by people in general," or "a place in public esteem or regard: good name." "Reputation," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/reputation (2022). *See also, Business Reputation,* Black's Law Dictionary (10th ed. 2014) ("The public's evaluation and regard for the quality of the

14

company's goods or services."). Mr. Davis testified it often takes "years to obtain a reputation within the oil and gas industry." The undisputed evidence showed Moriah had been in existence for just a few months when WPX RM requested TJ Ranch's consent to the assignment. The district court correctly found the only evidence TEP RM offered at trial about Moriah's reputation as an operator was Mr. Davis's testimony that WPX RM had "favorable opinions" about some of the principals of Moriah. There was no evidence about Moriah's character or quality as an operator, that it had a good name in the industry, or that it was held in esteem by the public. As such, TEP RM failed to prove Moriah was a reputable oil and gas operator.

[¶49] The district court also ruled TEP RM did not prove Moriah had the financial capability to meet its obligations to TJ Ranch under the SUA. To be considered capable of something, the entity must "have attributes . . . required for performance or accomplishment." "Capable," *Merriam-Webster.com Dictionary,* https://www.merriam-webster.com/dictionary/capable (2022). The trial evidence showed that WPX RM was primarily concerned with ensuring Moriah had sufficient funds to complete the sale and provide appropriate bonds for plugging and abandoning wells, not with whether Moriah could fulfill its responsibilities to TJ Ranch. While Mr. Davis gave some vague testimony that WPX RM knew Moriah was being capitalized by its parent company and "private equity" funds, he conceded WPX RM "did not know how much money" Moriah had and, as a "new entity," Moriah "really didn't have a lot of financials associated with it." TEP RM provided no substantive evidence that Moriah had the financial capability to perform its on-going obligations to TJ Ranch under the SUA.

[¶50] The trial evidence supports the district court's finding that TJ Ranch reasonably withheld its consent for WPX RM's assignment of the SUA to Moriah. TJ Ranch reasonably believed the assignment had already taken place when WPX RM asked for consent, and TEP RM did not prove Moriah was a reputable operator with the financial capability of performing the SUA.

### 2. Novation by Conduct

[¶51] TEP RM asserts the district court clearly erred by rejecting its claim that TJ Ranch novated the SUA when it entered into the Forbearance Agreement with Carbon Creek. "A novation is a new contract that replaces an existing contract when all parties to the original contract agree to the terms of the new contract." *Thomas v. JLC Wyo., LLC,* 2019 WY 14, ¶ 32, 434 P.3d 104, 113 (Wyo. 2019) (citing *Lewis v. Platt,* 837 P.2d 91, 92 (Wyo. 1992)). Or, stated in terms specific to debtors and creditors, a novation "is a mutual agreement, between all parties concerned, for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another[.]" *Scott v. Wyo. Oils, Inc.,* 52 Wyo. 433, 75 P.2d 764, 771 (Wyo. 1938) (citation omitted). "[N]ovation is never presumed"; it must be affirmatively "pleaded and proven" by the party asserting it. *Id. See also, Tri-State Oil Tool Indus., Inc. v. EMC Energies, Inc.,* 561 P.2d 714, 716

(Wyo. 1977) ("A novation is never to be presumed. All required elements must be proved[.]" (citing 58 Am.Jur.2d, *Novation*, § 32)).

[¶52] "We have identified the four [elements] of a novation as: (1) a previous valid obligation; (2) an agreement of all parties to a new contract; (3) extinguishment of the prior contract; and (4) validity of the new contract." *Lewis,* 837 P.2d at 92 (citing *Tri–State Oil,* 561 P.2d at 716). Each of the elements must be proven, "and unless it is the clear intention of all the parties concerned to extinguish the old obligation by substitution of the new one, a novation has not been effected." *Tri-State Oil,* 561 P.2d at 716 (citations omitted). *See also,* 58 Am.Jur.2d *Novation* § 12 (2022 Update) ("A novation must be made with the intent to discharge or extinguish a prior obligation or contract, and it has been held that the intent of the parties is . . . the most important factor in determining whether a novation has been accomplished.") (footnote omitted). "[W]here a novation involves the substitution of a new debtor, it is essential that the creditor make a clear manifestation of assent to the substitution of the new debtor and the release of the original debtor[.] . . . [O]therwise, the creditor retains his or her rights against the original debtor." 58 Am.Jur.2d *Novation* § 13 (2022 Update) (footnotes omitted). However, it is "'not necessary that a novation be in writing or that it be evidenced by express words. Like any other fact it may be proved as an inference from the acts and conduct of the parties.'" *Lewis,* 837 P.2d at 92 (quoting 15 Samuel Williston, *A Treatise on the Law of Contracts* § 1869, at 615-16 (3rd ed. 1972) (footnotes omitted)).

[¶53] The district court ruled TEP RM had "failed to prove a novation by conduct" because there was "no evidence that rebut[ted] the express language of the [F]orbearance [A]greement stating that a novation was not intended." We agree.

[¶54] The Forbearance Agreement was very clear that TJ Ranch and Carbon Creek had no intention of novating the SUA. In fact, the Forbearance Agreement addressed only one aspect of the SUA – the payment structure. TJ Ranch and Carbon Creek expressly ratified the other terms of the SUA, stating that TJ Ranch reserved "all rights under the [SUA], including its right to hold [Carbon Creek's] predecessors-in-interest liable for the performance of all obligations under the [SUA]" "after exercising its termination rights under [the Forbearance Agreement]." If Carbon Creek failed to pay TJ Ranch, the Forbearance Agreement became "null and void" and TJ Ranch would "be entitled to recover from [Carbon Creek] and its respective predecessors-in-interest" "all sums owed under the [SUA]" for every year since inception of the Forbearance Agreement. Applying the elements of novation, the SUA was a prior obligation between TEP RM f/k/a WPX RM, and TJ Ranch (element # 1) and the Forbearance Agreement was a valid new contract (element # 4); however, TEP RM f/k/a/ WPX RM, was not a party to the Forbearance Agreement (element # 2) and, most importantly, the SUA was not extinguished by the Forbearance Agreement (element # 3). *Lewis,* 837 P.2d at 92; *Tri–State Oil,* 561 P.2d at 716.

16

[¶55] TEP RM faults TJ Ranch and Carbon Creek for keeping it "in the dark" about the Forbearance Agreement. It refers to a trial exhibit containing an email between TJ Ranch's and Carbon Creek's attorneys, stating it would be "virtually impossible" to get all of Carbon Creek's predecessors-in-interest to "sign off" on the Forbearance Agreement. We do not see the relevance of the evidence since the SUA did not require such approval and nothing about WPX RM's duties to TJ Ranch was changed by the Forbearance Agreement. *See generally, St. Louis Twin Oaks Assocs. I, L.P. v. Exec. Off. Network, Ltd.,* 804 F.Supp. 1127, 1129 (E.D. Mo. 1992) (a lessor's modification of rent for a lease assignee does not release the original lessee from liability); *Abrahamson v. Brett,* 21 P.2d 229, 233-34 (Or. 1933), *abrogation on other grounds recognized by Carey v. Lincoln Loan Co.,* 125 P.3d 814, 830 (Or. Ct. App. 2005) ("The voluntary reduction in rent by the lessor to the assignee made during the term did not relieve the lessees and assignors . . . from the covenant in the lease to pay the rent. . . . A lessee covenanting to pay rent, who has sublet the demised premises, is not released from liability by the fact that after the sublease the lessor accepts rent from the sublessee.").

[¶56] TEP RM also maintains it should not be held liable under the SUA because TJ Ranch voluntarily chose to enter into a contractual relationship with "a new contracting party with which it had zero prior contractual privity – Carbon Creek." This argument rings hollow. TJ Ranch could not prohibit WPX RM's assignment of the SUA to Carbon Creek; it was compelled to work with Carbon Creek as the operator of the extensive coal bed methane development on its ranch lands whether it liked it or not. It is, therefore, unsurprising that TJ Ranch would attempt to work out any disagreements or disputes with Carbon Creek. Ms. Record testified she believed resolving TJ Ranch's disputes with Carbon Creek through negotiation would foster "goodwill" and "a good working relationship." If those efforts failed, TJ Ranch retained the right to seek recourse from Carbon Creek's predecessors-in-interest, for the damage to, and use of, its ranch lands.

[¶57] The trial record provides strong support for the district court's finding that TJ Ranch did not, through its conduct with Carbon Creek, novate the SUA. The district court's ruling that TEP RM did not meet its burden of establishing a novation was not clearly erroneous.

### *Denial of Motions to Stay*

[¶58] TEP RM challenges the district court's denials of its two motions to stay the state court proceedings pending resolution of a related federal court action between WPX Energy, Inc. and TJ Ranch. The Wyoming Rules of Civil Procedure do not provide a means for requesting a stay. However, it is generally recognized that courts have inherent power to stay an action. *See Dockter v. Lozano,* 2020 WY 119, ¶ 26, 472 P.3d 362, 370 (Wyo. 2020) (district courts have inherent authority to stay an action pending completion of a related action (citing *Paxman v. King*, 448 P.3d 1199, 1201 (Utah 2019))). "The district court's decision to stay or dismiss an action due to a pending proceeding . . . is

17

discretionary." *Sw. Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1141 (Wyo. 1999). We, therefore, review a district court's denial of a request for a stay for an abuse of discretion. *Rivermeadows, Inc. v. Zwaanshoek Holding & Financiering, B.V.,* 761 P.2d 662, 667 (Wyo. 1988). *See also, United States v. Dunn,* 557 F.3d 1165, 1170 (10ᵗʰ Cir. 2009) (reviewing the district court's denial of a motion to stay in a quiet title case for abuse of discretion).

> Abuse of discretion will be found if the trial court denies the stay under circumstances in which an injustice would be perpetrated on the party seeking the stay, and no hardship, prejudice or inconvenience would result to the party against whom it is sought.

*Rivermeadows,* 761 P.2d at 667.

[¶59]   TEP RM puts considerably more effort into its appellate argument that the district court erred by denying its requests for a stay than it did in trying to convince the district court to grant a stay in the first place. TEP RM's first request for a stay was included as an alternative argument in its motion to dismiss TJ Ranch's complaint on jurisdictional grounds. TEP RM referred to the federal declaratory judgment action brought by WPX Energy, Inc. against TJ Ranch. In a single paragraph, without citation to legal authority or a specific comparison of the facts or claims in the two actions, TEP RM asserted that a decision in favor of WPX Energy, Inc. in the federal case would be determinative of TJ Ranch's claim against TEP RM in the case at bar. TEP RM did not provide any documentation of the federal case; the federal complaint and WPX Energy, Inc.'s response to TJ Ranch's motion to dismiss in the federal case are included in the appellate record because TJ Ranch filed them as exhibits when responding to TEP RM's motion to dismiss.

[¶60]   The district court denied TEP RM's first motion to stay on the grounds that 1) WPX Energy, Inc. sought a declaration of rights between it and TJ Ranch in the federal action, while TJ Ranch sought actual damages from TEP RM in the state action; 2) TEP RM did not show a stay was necessary to avoid harm to either party; and 3) Wyoming courts have an interest in enforcing Wyoming contracts.

[¶61]   In its renewed motion for a stay, TEP RM argued that staying this case would serve the economic interests of the parties, promote judicial efficiency, and reduce the risk of inconsistent results. It also emphasized that WPX Energy, Inc. filed its case in federal court before TJ Ranch filed this state court action. TEP RM stated WPX Energy, Inc.'s summary judgment motion in federal court was similar to TEP RM's cross motion for summary judgment in this case and indicated it had attached a copy of WPX Energy, Inc.'s federal summary judgment motion and brief to its renewed motion for a stay. However, the attachment is not included in the record on appeal. The district court denied TEP RM's

renewed motion to stay, concluding "nothing ha[d] changed" since its denial of the original motion "that would warrant staying the proceedings."

[¶62]   In contrast to the dearth of information about the federal case included in the official record on appeal, TEP RM attached seven exhibits to its appellate brief, including more than 100 pages of materials filed in federal court.  In addition, although TEP RM cites several authorities in its appellate argument, it cited only one legal authority in its two district court filings, *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), for the general rule that courts have inherent authority to grant stays.

[¶63]   It is not appropriate for "'this Court to reverse a district court ruling on grounds that were never presented to it.'" *Miller v. Beyer,* 2014 WY 84, ¶ 34, 329 P.3d 956, 967 (Wyo. 2014) (quoting *Sundance Mtn. Resort, Inc. v. Union Tel. Co.,* 2007 WY 11, ¶ 17, 150 P.3d 191, 196 (Wyo. 2007)).

> "This is particularly true when our review is for an abuse of discretion because to determine whether there was an abuse we necessarily must consider the arguments and evidence presented to the district court. Plainly stated, a party cannot fail to present an argument and then argue on appeal that the district court abused its discretion in not considering the argument the party did not present."

*Miller,* ¶ 34, 329 P.3d at 967 (quoting *Sundance Mtn. Resort,* ¶ 17, 150 P.3d at 196) (other citations omitted).

[¶64]   Moreover, items attached to a brief are not considered part of the record on appeal. *Hodson v. Sturgeon*, 2017 WY 150, ¶ 5, 406 P.3d 1264, 1265 (Wyo. 2017) (it is improper to attach exhibits, which are not included in the record on appeal, to an appellate brief).  "'An appellant bears the burden of bringing to the reviewing court a sufficient record on which to base its decision,' *Aragon* [*v. Aragon*], 2005 WY 5, ¶ 20, 104 P.3d [756,] 762 [(Wyo. 2005)], and he cannot supplement the appellate record by attaching documents to his brief. *Barnes v. Barnes*, 998 P.2d 942, 945 (Wyo. 2000)." *In re Adoption of ADA,* 2006 WY 49, ¶ 10 n.1, 132 P.3d 196, 201 n.1 (Wyo. 2006). In a footnote in its brief, TEP RM recognizes that many of the federal court documents are not included in the record in this case but maintains we can take judicial notice of them. "'The rules of appellate procedure provide a basis for supplementing the official record, and we will not condone a party's failure to utilize the rules by considering documents which are simply attached to a brief.'" *Gaston v. Life Care Ctrs. of Am., Inc.,* 2021 WY 74, ¶ 11 n.1, 488 P.3d 929, 935 n.1 (Wyo. 2021) (quoting *Roeschlein v. State,* 2007 WY 156, ¶ 28, 168 P.3d 468, 476 (Wyo. 2007) and citing W.R.A.P. 3.04). "'To have a court take judicial notice of a document, the proponent must provide written notice to the court and the 'judicially noticed documents must be physically included as part of the record

filed on appeal[] or must be on file at the Supreme Court as the result of a different proceeding.'" *Id.* (quoting *Cockreham v. Wyo. Prod. Credit Ass'n,* 743 P.2d 869, 872-73 (Wyo. 1987)). TEP RM did not follow this procedure. Given the state of the record and TEP RM's failure to properly present its argument for a stay to the district court, we cannot find the district court abused its discretion.

[¶65] In any event, TEP RM does not demonstrate how the district court's denial of its motions for a stay would perpetrate an injustice on it or that a stay would not prejudice TJ Ranch. *See Rivermeadows,* 761 P.2d at 667. TEP RM asserts it will be harmed because it is a stranger to the SUA. We have already rejected that argument because TEP RM is, for all intents and purposes, WPX RM. On the record properly before us, we cannot fault the district court for, in its discretion, denying TEP RM's motions for a stay because the state and federal actions involve different parties, the claims for relief in the two suits differ, and TEP RM failed to show a stay was necessary to prevent it from being harmed.

## CONCLUSION

[¶66] The district court correctly exercised personal jurisdiction over TEP RM. The court did not clearly err in finding TJ Ranch reasonably withheld its consent for WPX RM's assignment of the SUA to Moriah and TJ Ranch did not novate the SUA by cooperating and entering into the Forbearance Agreement with Carbon Creek. The district court did not abuse its discretion by denying TEP RM's motions to stay.

[¶67] Affirmed.